KEITH & PERRY COAL COMPANY v. BINGHAM, *Appellant.*

1. **Church Corporation:** ACT OF APRIL 1, 1872 : CONSTITUTION OF 1865. The act of April 1, 1872 (Acts of 1871-2, p. 16), amending section 5, chapter 70, General Statutes, 1865, *held* not to be in conflict with article 1, section 12, constitution of 1865, against the objection that said act is broader in its scope as to those who could become a church corporation than the constitution warranted, and that said act authorizes the incorporation of a church before the persons making the application had organized as a church.

2. —— : CONSTITUTION OF 1875. When every act necessary to perfect a church corporation, under chapter 70, General Statutes, 1865, had been performed before the first of July, 1877, such corporation was not affected by section 8, article 2, of the constitution of 1875, forbidding the establishment of religious corporations.

3. **Corporation :** CONVEYANCE : TRUSTEES. Where a conveyance is made to the trustees of a corporation, without naming them or any of them, the title vests in the corporation named in the deed.

4. **Church Corporation :** MORTGAGE. Under section 706, Revised Statutes, 1879, church corporations have power to mortgage their real estate.

5.  **Mortgage:** FORECLOSURE: UNITED STATES CIRCUIT COURT. A
    United States circuit court has jurisdiction of a suit to foreclose a
    mortgage on real estate in this state.

6.  **Deed:** NOTICE. Where neither plaintiff nor his grantors had con-
    structive or actual notice of a deed which was an essential link
    in defendant's chain of title the former will not be affected thereby
    and he will be entitled to recover.

7.  **Judgment:** COLLATERAL ATTACK: CORPORATION. Where a *de
    facto* corporation institutes a suit to vest title to real estate in it,
    and pending the suit becomes one *de jure*, the decree entered in
    conformity to its prayer remains firm and effectual until annulled
    by a direct proceeding, and is not open to collateral attack.

## *Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

AFFIRMED.

*Richard H. Field, Wash. Adams* and *Bingham & Adams* for appellant.

(1) The deed from J. B. Moore and wife, dated
August 31, 1876, is not to the church corporation, nor is
it expressed therein to have been made for the money of
the corporation, but to the trustees of said church, and
expresses upon its face that it was so made in considera-
tion of money paid by its said trustees; they (and not
the corporation) are therefore the grantees in such deed.
*Draper v. Minor*, 36 Mo. 290. True, the trustees are
not designated by their individual names, but there
appears in the record the names of the trustees in the
deed from Hough as well as the new trustees provided
for in the articles of association for incorporation. The
grantees in this deed were certainly the former, or the
latter trustees, and the alleged church corporation is
not the grantee in such deed. *Durfee v. Morris*, 49 Mo.
55; *Towar v. Hale*, 46 Barb. 361; *In re Bull*, 45 Barb.
334; *Dunbar v. Soule*, 129 Mass. 284; *Methodist Society
v. Bennet*, 39 Conn. 293; *Doe ex dem. v. Hay*, 21 N. J. L.

174; *Kopp v. Moore*, 6 Kansas, 27; *Farmington v. Hobert*, 74 Maine, 406; *Tartar v. Gibbs*, 24 Md. 323; *Murphy v. Price*, 48 Mo. 247. The use of the word "Trustees," does not even create a trust; it is merely *descriptio personarum*. Authorities last above preceding. Perry on Trusts (3 Ed.) sec. 158; *Bryant v. Durkee*, 9 Mo. 169; *Thornton v. Rankin*, 19 Mo. 193-4; *Ely v. Porter*, 58 Mo. 158. (2) The decree purporting to divest R. S. Thomas *et al.*, trustees of the unincorporated church society, and to invest the alleged church corporation with title to the lot in question, is void, because by both the constitutions of 1865 and 1875, church corporations were expressly disabled to acquire or hold any property save for four specified purposes, to-wit: For a church, chapel, parsonage and cemetery, and for these purposes to a limited extent only. The decree not only fails to show that the pretended investiture of title to the lot in question in the pretended church corporation was for any one of the purposes authorized by the constitution, but it by implication states that such investiture of title was effected for general purposes, if not for a purpose directly opposed to the constitution; it is void for each of such reasons. Const. 1865, art. 1, secs. 12, 13; Const. 1875, art. 2. sec. 8; *Grove v. Trustees*, 33 Md. 451; *Catholic Church v. Tobein*, 82 Mo. 418. (3) The legislative act under which the pretended church corporation claims to have come into existence is unconstitutional, and this being so its corporate existence can be collaterally assailed by any person, even when the person assailing has contracted and dealt with it as a corporation. *Horriman v. Southam*, 16 Ind. 190; *Snyder v. Studebaker*, 19 Ind. 462; *Slocum v. Warren*, 10 R. I. 116; *Heaston v. Railroad*, 16 Ind. 275; *Piper v. Rhodes*, 30 Ind. 309; *Railroad v. Plumas County*, 37 Cal. 354. (4) While the general rule undoubtedly is that a *de facto* corporate existence cannot be collaterally attacked, yet there is a

well-founded exception to this rule, where the incor-
poration was attempted, as here, under (delegated
authority) a general law ; as in such cases the attainment
of corporate existence depends, not upon color of a
legislative charter and user, but upon the performance
of specified acts on the part of the incorporators and
state officials, and until every step prescribed to that
end has been taken there is and can be no corporate
existence, and it is open to collateral attack, especially
to any person who has done nothing to estop himself
therefrom. Such corporations are to be viewed from a
different standpoint to those created by the legislature
itself. *Bigelow v. Gregory,* 73 Ill. 197 ; *Mokelumne Co.
v. Woodbury,* 14 Cal. 424 ; *Slocum v. Pipe Co.,* 10 R. I.
112 ; *Slocum v. Warner,* 10 R. I. 116 ; *Harris v.
McGregor,* 29 Cal. 124 ; *Perryman v. Bethune,* 89 Mo.
158 ; *Boyce v. Trustees,* 46 Md. 359. (5) The effect of
the constitution of 1875, in providing a new plan and
purpose for the creation of religious corporations, was
to abrogate all legislative provisions on the subject of
religious corporations. *Turnstall v. Wormley,* 54 Texas,
476 ; *Wade v. School,* 43 Md. 178 ; *State v. Dawson,* 16
Ind. 40. (6) The foreclosure of a mortgage in Missouri is
and always has been a proceeding at law and not in
equity. *Carr v. Holbrook,* 1 Mo. 241 ; *Smith v. Finn,*
77 Mo. 499. Being a legal and not an equitable pro-
ceeding, to be of validity it must be according to the
remedy provided in the state statutes. R. S., U. S., sec.
914. The statutory foreclosure by a special *fieri facias*
being adequate and ample, will be held a supersedure
of the right to any other remedy or mode to effect the
same object. *Baker, adm'r, v. Railroad,* 36 Mo. 543.
The test of the right of a party to appeal to the juris-
diction of equity in the United States courts, as in other
courts, is the presence or absence of an adequate remedy
at law.

*Daniel B. Holmes* and *Botsford & Williams* for respondents.

(1)  The First Baptist Church of Kansas City, Missouri, at the time when it received and conveyved the lot in controversy, was a *de jure* corporation, organized and existing strictly in accordance with the laws of this state, and its legal existence is a question purely between the state and the corporation which cannot be raised in a collateral proceeding.  The only remedy in such a case is a proceeding by way of *quo warranto*.  *Smith v. County*, 54 Mo. 58, 81 ; *County v. Shores*, 97 U. S. 272 ; *Railroad v. Cary*, 26 N. Y. 75, 77 ; *Railroad v. St. Louis*, 66 Mo. 228, 245 ; *Smith v. Sheely*, 12 Wall. 358 ; *Doyle v. Petroleum Co.*, 44 Barb. 239, 244. (2) Since the power to take and hold real estate by an existing corporation cannot be collaterally questioned, the power to hold and convey real estate being granted for any purpose, the question whether the church corporation could convey the premises described in the mortgage, either by mortgage or an absolute conveyance, could only be raised and tried in a proceeding by the state, through its proper officers, in a suit instituted directly for the purpose.  R. S. 1879, sec. 706, subd. 4 ; *Chambers v. St. Louis*, 29 Mo. 576-7 ; *Land v. Coffman*, 50 Mo. 243-253 ; *Shewalter v. Pirner*, 55 Mo. 219-234 ; *Hovelman v. Railroad*, 84 Mo. 632-640 ; *Railroad v. Howard*, 7 Wall. 393.  (3) The deed from J. B. Moore and wife to the "Trustees of The First Baptist Church of Kansas City, Missouri," vested the legal title in the corporation.  (4) The decree of foreclosure of the United States circuit court in equity, and the marshal's deed thereunder, in accordance with the chancery practice of that court, passed the title to the purchaser. Courts of equity have inherent original jurisdiction of the subject of mortgages, both for the foreclosure and

redemption of them.   2 Jones Mortg. (2 Ed.) sec. 1443.
And while a petition to foreclose a mortgage under the
statute of this state concerning mortgages is a proceed-
ing at law, yet such proceeding is not exclusive and
the statute does not abolish or take away the right of a
party to pursue his rights in a court of chancery by a
bill in equity for foreclosure.   *Riley v. McCord,* 24 Mo.
268; *Fithian v. Monks,* 43 Mo. 518; *Rubey v. Mining
Co.,* 21 Mo. App. 159.   The chancery jurisdiction of the
courts of the United States is conferred by the constitu-
tion and laws of the United States, and in the exercise
of that jurisdiction the courts of the United States are
not governed by the statutes regulating the practice in
the state courts, but proceed according to the principles,
rules and usages which belong to courts of equity as
contradistinguished from courts of law.   *Boyle v. Zack-
arie,* 6 Pet. 648; *Robinson v. Campbell,* 3 Wheat. 212;
*Bennett v. Butterworth,* 11 How. (U. S.) 669; *Strettell
v. Ballou,* 3 McCrary C. C. 46.

NORTON, C. J. –This is an action of ejectment to
recover possession of lot 26, in block 6, of Hubbard's addi-
tion to the City of Kansas, in which plaintiff recovered
judgment, from which defendant has appealed.

It was admitted on the trial that Chester Hubbard
was the original owner of the lot in question.   And
plaintiff in support of his title put in evidence a deed
from said Hubbard, dated June 10, 1856, to J. B. Moore,
to the lot in controversy; also an order of the circuit
court of Jackson county, dated May 30, 1873, incorpor-
ating the members of "The First Baptist Church of
Kansas City" by that name, together with the petition
to the circuit court, accompanied with the articles of
association, signed by the members of the church organi-
zation proposed to be incorporated; also certificate of
the clerk of said court, dated May 30, 1873, under its
seal, that said members had become a body politic and

corporate under the name and style of "The First Baptist Church of Kansas City, Missouri;" also certificate of the secretary of state, dated February 29, 1876, of the corporate existence of "The First Baptist Church of Kansas City, Missouri."

Plaintiff also put in evidence a deed of mortgage from "The First Baptist Church of Kansas City, Missouri," to "The American Baptist Home Mission Society of New York," dated September 30, 1876, conveying the lot in question to secure a ·debt therein named; also transcript of the record of the United States circuit court for the western district of Missouri, in a suit brought by the "American Baptist Home Mission Society of New York," against "The First Baptist Church of Kansas City, Missouri," to foreclose the aforesaid mortgage, resulting, on the twenty-fifth of May, 1881, in a decree of foreclosure, which, together with the proceedings thereunder, report of sale of the premises made by the United States marshal to Wm. H. Harris, the approval of said report by the court, and an order for the deed, were also put in evidence.

Plaintiff further put in evidence a deed, dated October 17, 1881, from said United States marshal, conveying the premises to said Wm. H. Harris; and also various mesne conveyances putting the title acquired by said Harris, if any, in the plaintiffs in this suit. It was then stipulated that, on April 1, 1880, the said lot and building ceased to be used for the purpose of religious worship and were never thereafter used for that purpose.

Plaintiff also put in evidence a tax deed,· dated March 19, 1884, and recorded March 21, 1884, conveying said lot to John C. Gage, and a deed from said Gage, dated March 19, 1884, conveying the lot to plaintiff.

Evidence was offered tending to show that plaintiff paid thirteen thousand dollars for the lot, and that a short time before the purchase the streets adjoining the lot had been cut down so as to leave the surface of the .

lot twenty-eight or thirty feet above the surface of the streets; that plaintiff had no key to any door of the church building thereon, but went upon said lot after its purchase, tore down the building and graded the lot down to a level with the streets at a cost of about two thousand dollars, with a view of putting a building upon it; that, after said grading had been completed, the defendant, the day before this suit was brought, entered on said lot and built a wire fence around the same, and notified plaintiff in writing of the fact.

Defendant, in support of her claim, offered in evidence: A deed from John S. Hough, dated April 29, 1857, conveying said lot to "The Trustees of the First Baptist Church of Kansas City," viz: "R. S. Thomas, J. M. Ashburn, A. J. Martin and T. M. James," "to have and to hold unto them, the said trustees, parties of the second part, and to their successors, to and for the only proper use and behalf of the said church forever." In connection with this deed and before it was offered, the court received, over plaintiff's objection, the evidence of said John S. Hough, to the effect that, previous to his making said deed, he had purchased the lot described therein from J. B. Moore and received a deed from him conveying said lot, that said deed was never recorded for the reason that he had lost or mislaid it.

It was then stipulated that, in 1857, after the delivery of said deed from Hough, a church was erected on said lot out of the funds subscribed for that purpose by the members of said First Baptist Church of Kansas City, Missouri, which was then an unincorporated society, and that said lot and church were occupied and used exclusively by the said First Baptist Church for the sole purpose of religious worship continually thereafter until April 1, 1880, when said congregation moved into a new church building on a different lot, and that said first lot and church building thereon were never thereafter used as a place of religious worship.

Defendant next offered, over plaintiff's objection,

the evidence of J. M. Ashburn and A. J. Martin, two of the trustees in said deed, and others, tending to show that the lot in controversy was a gift from Dr. Johnston Lykins, since deceased, and the former husband of appellant; that said 'Lykins purchased said lot from John S. Hough, the grantor in said deed, and paid him therefor five hundred dollars, and gave the same to said trustees to hold in trust for the church as specified in said deed, with the further understanding in parol that if the congregation of said church failed to erect a church building thereon, or if, after erecting a church building on said lot, it ceased to be used for church purposes, or as a place of worship by said congregation or denomination, that then said lot was to become the property of said Lykins, his heirs or assigns; that this parol understanding, as well as the gift, was known and assented to by the trustees in said deed and the members of said denomination, and the gift made and accepted with such understanding.

It being stipulated that Johnston Lykins was duly adjudged a bankrupt in 1873, and that he died in 1876, defendant offered in evidence a deed from Edward H. Webster, assignee in bankruptcy of Johnston Lykins, dated September 2, 1884, conveying said lot as such assignee to defendant, and also a quit-claim deed from John S. Hough to defendant, dated November 11, 1884, conveying the lot in dispute.

Defendant also offered in evidence the following:

City collector's notice of tax sales published in the Kansas City Mail, a newspaper, once in each week for three successive weeks as follows, to-wit: On October 22, 1881, on October 29, 1881, and on November 5, 1881.

It was here stipulated that the tax sale of 1881 began, as recited in the tax deed, on the first Monday, being the seventh day of November, 1881.

Evidence tending to show that the tract in controversy was not sold or offered to be sold by the city collector until January 10, 1882; that when the sale of 1881

began, only a lot or two a day was offered for sale by the collector for over a month from the beginning of the sale, to give property-owners a chance to come in and pay taxes ; that the city collector did not sell or offer for sale any delinquent tract of real property on Thanksgiving day (November 27), of 1881, nor on December 25, 1881, nor on January 1, 1882; that on and one day previous to the day of sale of the lot in controversy, there were no persons who bought any property at said tax sale, except the city auditor for the city, Rob't F. Barrett by M. S. C. Donnell and Jos. Kidd by one Young ; that said Young and Donnell, for Kidd and Barrett, or in their names, took regular turns at bidding off tracts of real property then offered for sale for the taxes, interests and costs thereon ; that they did not bid against each other, and in no instance for less than the whole of any tract of real property delinquent and offered for sale ; that previous to the two days mentioned, a short time before and during the sale of 1881-2 aforesaid, said Donnell and Young had a dispute over whose turn it was to bid against each other.

Plaintiff in rebuttal offered the following, viz:

(1)   Evidence tending to show that said deed from John S. Hough to T. M. James, R. S. Thomas, J. M. Ashburn and A. J. Martin, as trustees of the First Baptist Church of Kansas City, Missouri, was made, executed and delivered unconditionally, and on the terms mentioned in the deed itself, and none other ; that Dr. Johnston Lykins subscribed towards the fund for the purchase of a church lot and the erection of a church edifice thereon, in the same manner and on the same terms as all other subscriptions were made to said fund, and that he paid a part of his subscription by furnishing the money to pay for said lot, and there was no parol agreement whatever between Dr. Lykins and said trustees or said congregation respecting any forfeiture or reverter of said lot to Dr.

Lykins, his heirs or assigns, on any kind of condition whatever, and that respondent never had any notice or knowledge whatever of any agreement or understanding ever having been made or existing or claimed, different from or in addition to the terms specified in said Hough deed.

(2) It was here stipulated that said R. S. Thomas died intestate before the suit in which the decree hereinafter set forth was rendered was commenced, and that his only heirs were the following : E. K. Bingham, wife of George C. Bingham, John P. Thomas, Mary B. Piper, wife of James M. Piper, Lucy Anderson, wife of J. D. Anderson, Martha Thomas, Robert B. Thomas, William Thomas and Ella Thomas.

(3) Decree of the circuit court of Jackson county of date April 15, 1876, in the suit of the First Baptist Church of Kansas City, Missouri, vs. Thomas M. James, A. J. Martin, J. M. Ashburn, E. K. Bingham, George C. Bingham, John P. Thomas, Mary B. Piper, James M. Piper, Lucy Anderson, J. D. Anderson, Martha Thomas, Robert B. Thomas, William Thomas and Ella Thomas, divesting the defendants of all the title to said lot and vesting the same fully and completely in the First Baptist Church of Kansas City, Missouri, in its corporate capacity. Said suit was instituted and service of notice thereof made upon the defendants therein in the year 1872.

The above was all the evidence offered, and the court thereupon gave an instruction that, under the pleadings and evidence, plaintiff was entitled to recover.

The first question arising on the above record is, was the First Baptist Church of Kansas City, Missouri, a body corporate on the thirtieth of September, 1876, at which time J. B. Moore made the deed in evidence conveying the lot in question to "The trustees of the First Baptist Church of Kansas City, Missouri"? And if so, did said Moore's deed vest title to the property conveyed in the corporation? Plaintiff claims that said church

became incorporated by virtue of section 5 of chapter 70, General Statutes, 1865, as amended by the legislature (Acts 1871-2, p. 16) and in compliance with the provisions of said chapter. The said section is as follows: Sec. 5: "Any number of persons, not less than three in number, may become an incorporated church, religious society or congregation, by complying with the provisions of this chapter, except that it will be sufficient if the petition be signed by all the persons making the application; and when so incorporated, such persons and their associates and successors shall be known by the corporate name specified in the certificate of incorporation, and shall be entitled to all the privileges, and capable of exercising all the powers conferred or authorized to be conferred by the constitution of this state upon such corporation."

Sections 2 and 3 of said chapter are as follows: "Sec. 2. Any association of persons, desirous of becoming incorporated under the provisions of this chapter, shall present to the circuit court of the proper county, or the judge thereof, in vacation, a copy of their constitution or articles of association, and a list of all their members, together with a petition to such court or judge thereof for a certificate of incorporation under the provisions of this chapter.

"Sec. 3. If the circuit court or judge thereof shall be of the opinion that said articles of association be not inconsistent with the constitution or laws of the United States or of this state, then the same shall be filed with the clerk of said court, and then said court shall grant to said association a certificate in the following form, to wit:

"Whereas, A, B, C, D, E, F, and others, have filed in the office of the clerk of the circuit court their articles of association, in compliance with the provisions of an 'act concerning corporations,' approved March 19, 1866, with their petition for incorporation, under the

name and style of ——— ; they are, therefore, hereby declared a body politic and corporate, by the name and style aforesaid, with all the powers, privileges and immunities granted in the act above named.

"By order of the circuit court ( or judge thereof. ) " Attest :

[ SEAL ]                                    G. H.,

" Clerk of the circuit court of ——— county."

The evidence shows that twelve persons, citizens of Kansas City, on the thirtieth of May, 1873, filed in the office of the clerk of the circuit court of Jackson county their petition, on behalf of themselves and their associates, filing with the same the articles of association, with the names of more than three hundred persons, including among them Johnston Lykins, and Mattie Lykins, the defendant in this suit, and at that time the wife of said Lykins. These associates are described in the said articles "as members of such organization." The petition prayed that they be incorporated under the name and style of ".The First Baptist Church of Kansas City, Missouri." The evidence shows that said petition and articles of association, on being examined by the said circuit court and being found not inconsistent with the constitution of the United States or of this state, ordered that the prayer of the petition be granted, and thereupon a certificate of incorporation was duly issued under the hand and seal of the clerk of said court in strict conformity with the requirements of said chapter 70, General Statutes, 1865, *supra.*

It further appears that, in pursuance of section 2, chapter 62, General Statutes, 1865, a copy of the articles of association of said corporation was filed in the office of the secretary of state, who thereupon issued his certificate, dated February 29, 1876, certifying that said incorporation had been duly organized.

It further appears that J. B. Moore, in whom was the record title to the lot in controversy, on August 31,

1876, conveyed the same by deed to "The Trustees of the First Baptist Church of Kansas City, Missouri," and that thereafter, on the thirtieth day of September, 1876, "The First Baptist Church of Kansas City, Missouri," by its deed, mortgaged said lot to the "American Baptist Home Mission Society of New York," to secure an indebtedness therein specified. The evidence shows that this mortgage was foreclosed by a decree of the United States circuit court for the western district of Missouri, rendered on May 31, 1881, under which the lot in question was sold as directed by the decree, by the United States Marshal to Harris, and a deed executed conveying the same to him ; it also shows that the title thus acquired by Harris passed by various mesne conveyances to plaintiff.

Notwithstanding this evidence, it is claimed by defendant that "The First Baptist Church of Kansas City, Missouri," never became a body corporate either *de jure* or *de facto*, and to establish this contention, it is insisted that the act of the legislature, *supra*, authorizing such incorporations to be formed, is unconstitutional, in this, that the said act is broader in its scope as to those who could become a church corporation than the constitution warranted. The constitution of 1865, provides as follows : Art. 1, sec. 12 : "That no religious corporation can be established in this state, except that, by a general law, uniform throughout the state, any church or religious society, or congregation, may become a body corporate for the sole purpose of acquiring, holding, using and disposing of so much land as may be required for a house of public worship, a chapel, a parsonage and a burial ground, and managing the same, and contracting in relation to such land, and the building thereon, through a board of trustees, selected by themselves, but the quantity of land to be held by

any such body corporate, in connection with a house of worship, or a parsonage, shall not exceed five acres in the country, or one acre in a town or city."

We are of the opinion that the act passed by the legislature is in pursuance of the power conferred upon it by the above section. The act in question only allows the incorporation of a church, religious society or congregation, and this the constitution permits and authorizes to be done. Appellant's contention is, that the constitution contemplated that a church, religious society or congregation should be organized or in existence before it could be incorporated, and that the act of the legislature contemplates and authorizes the incorporation of a church before the persons making the application had organized as a church. Conceding, for the argument (although the distinction attempted to be drawn is shadowy), that such was the intention of the above constitutional provision, if the act of the legislature can be construed so as to harmonize with that intention it is our duty so to construe it, and that it is susceptible of the construction, that before any incorporation can be had, the persons making the application and their associates must have constituted a church, religious society or congregation, is, we think, manifest from the requirements in section 2, chapter 70, *supra*, that, in connection with the petition, the petitioners must present to the court or judge a copy of their constitution or articles of association and a list of all their members, as the word members can only refer to those persons composing a church or a religious society or congregation theretofore formed.

It is next insisted that section 8, article 2, of the constitution of 1875, abrogated and annulled all legislative provisions on the subject of religious corporations. Said section 8 is as follows: "That no religious corporation can be established in this state, except such as may be created under a general law for the purpose

only of holding the title to such real estate as may be prescribed by law for church edifices, parsonages and cemeteries."

There is nothing in this contention. If the act in question is not inconsistent with the said provisions, it is provided by section one of the schedule to the constitution that it shall remain in force until altered or repealed ; and if the act is inconsistent with the above provision which requires legislation to enforce it, the act nevertheless was continued in force by the same section of the schedule which declares that, " the provisions of all laws inconsistent with this constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions of this constitution, or require legislation to enforce them, shall remain in force until the first day of July, 1877, unless sooner amended or repealed." Before the first of July, 1877, every act necessary to perfect the church corporation had been performed.

It is also insisted that, although the church had become a separate body when Moore executed his deed conveying the lot in dispute to " The Trustees of the First Baptist Church of Kansas City, Missouri," said deed was [ineffectual to vest the title of the lot in the corporation. In support of this contention, we have been cited to a line of cases which hold that when a conveyance is made to certain named persons as trustees of a corporate body that the effect of such conveyance is to vest title in them as trustees, but that is not this case. Here the conveyance is made to 'the trustees, etc., without naming them or any of them, and in such case the title vests in the corporation named in the deed, as is shown by the following cases : *Milford Turnpike Co. v. Brush*, 10 Ohio, 112 ; *People v. Runkle*, 9 Johns. 147-8 ; *Road Company v. Creeger*, 5 Harr. & J. 122 ; *Newport Mechanic's Mfg. Co. v. Starbird*, 10 N. H. 123 ; *Bagley v. Ins. Co.*, 6 Hill, 476 ; *Vansant v. Roberts*, 3

Md. 119 ; *North St. Louis Christian Church v. McGowen,* 62 Mo. 279 ; *Douthitt v. Stinson,* 63 Mo. 268 ; *N. Y. African Society v. Varick,* 13 Johns. 38 ; 18 Ind. 237.

It is also contended that the corporation had no power to mortgage the lot in question. This contention is answered by section 1, chapter 62, page 326, General Statutes, 1865, and section 706, Revised Statutes, 1879, which provides, "that every corporation as such has power * * * to hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation may require, not exceeding the amount limited in its charter or the law creating it."

It is also insisted that, as the statute of this state provides for foreclosing a mortgage by a proceeding in a court of law, the proceeding in equity in the United States circuit court to foreclose the mortgage was not permissible, and that the decree rendered therein foreclosing the mortgage and ordering a sale of the property was not enforceable, and that the sale and deed made in performance thereof passed nothing to the purchaser and grantee. There is nothing in this point. In the case of *Riley, adm'r, v. McCord, adm'r,* 24 Mo. 268, it is said : "It was a question in our courts at one time whether the proceeding under the statute concerning mortgages was one in equity or one at common law, subject to the provisions of the statute. It was early settled that a proceeding to foreclose the equity of redemption of a mortgage under the statute was a proceeding at law, and was not governed by the rules of proceedings in equity. It has also been the opinion, that notwithstanding the mode prescribed by the statute a party might forego the statutory remedy, and pursue his rights in a court of chancery." It follows from this that if chancery jurisdiction in such cases could not be denied to the courts of the state, it could not be denied to the United States circuit courts, which possessed chancery as well as common-law jurisdiction.

It not appearing in the evidence that either "The American Baptist Home Mission Society of New York," or those claiming under the mortgage made to it, had either actual or constructive notice that the lot in question had been conveyed by J. B. Moore to Hough, the trial court, in the view we have taken, was justified in giving an instruction that under the pleadings and evidence plaintiff was entitled to recover.

In regard to the Hough deed conveying the lot to James and others, trustees of the unincorporated "First Baptist Church," etc., it may be said that the decree of the Jackson county circuit court had the effect to put whatever title it conveyed to the trustees of the unincorporated church in the trustees of the "First Baptist Church of Kansas City, Missouri," said court having jurisdiction of the subject-matter and parties ; and it further appearing that when suit was begun said church was a *de facto* corporation, and when the decree was rendered that it had received the certificate of the secretary of state certifying to its corporate existence, such decree remains firm and effectual till annulled by a direct proceeding, and is not open to collateral attack. *Gray v. Bowles*, 74 Mo. 119 ; *Rosenheim v. Hartsock*, 90 Mo. 357.

This view of the case renders it unnecessary to consider or discuss the numerous points made with reference to questions arising on the tax deed and other matters, and the judgment on the whole record being for the right party, and no error appearing therein justifying an interference with the judgment, it is hereby affirmed.　SHERWOOD and BRACE, JJ., concur ; BLACK, J., not sitting ; RAY, J., absent.