BRIM v. FLEMING *et al.*, *Appellants*.

Division One, November 11, 1896.

1. **Deed of Trust:** FORECLOSURE PROCEEDINGS: STATUTE. Under the statute directing that foreclosure proceedings shall be subject to, and governed by, the law "regulating proceedings in civil cases," whether a proceeding to foreclose a deed of trust is one at law or in equity must be determined by the circumstances of the particular case as disclosed by the pleadings and the relief to be granted.

2. ———: ———: EQUITY. A petition to foreclose a deed of trust and to determine the priorities of liens and asking that the equity of redemption of all the parties be foreclosed and that the property be sold and for all necessary and proper orders, *held* to be a proceeding in equity.

3. **Evidence:** WITNESS: TRANSACTION WITH DECEDENT: AGENT. An agent of one of the parties to a trust deed *held*, under the circumstances of this case, a competent witness though the agent of the other party who conducted the transaction was dead.

4. **Deed of Trust**: NOTE: INTEREST: FILLING BLANK SPACES. Blank spaces in a note and deed of trust for expressing the rate of interest may, with the consent of the maker and before delivery and payment of the consideration, be filled without a reacknowledgment of the deed; the latter not being essential to make the deed effective to pass title.

5. ———: ———: ———: ———. *Semble* that such blanks may also be so filled with the consent of the maker after delivery.

*Appeal. from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*B. R. Vineyard* for appellants.

(1) The insertion of the figures "10" before the words "per cent" in the note and deed of trust in suit was made by James Brim. Such insertion changed the terms of both those instruments, and, having been made without the consent of the maker, rendered them void. *Bank v. Nickell*, 34 Mo. App. 295; *Bank v. Eckey*, 51 Mo. 272; *Woodworth v. Anderson*, 63 Iowa, 503. (2) Except as affected by the rights of an innocent purchaser for value of negotiable paper, it has been settled through a long line of decisions in this state, that when an alteration is made in a note by an interested party in charge thereof, whether material or immaterial, it makes the instrument void, and the maker will be discharged. *Haskell v. Champion*, 30 Mo. 139; *Moore v. Hutchinson*, 69 Mo. 429; *Bank v. Dunn*, 62 Mo. 79; *Bank v. Fricke*, 75 Mo. 178; *Bank v. Myers*, 50 Mo. App. 157. (3) And the plea of *non est factum* is the proper plea to interpose to test the validity or rather invalidity of a note which has been rendered void by alteration of its terms, especially when altered before delivery. *Bank v. Nickell*, 34 Mo. App. 295; *Moore v. Hutchinson*, 69 Mo. 429; *Walton Plow*

*Co. v. Campbell*, 52 N. W. Rep. 883; *Lincoln v. Lincoln*, 12 Gray, 45. (4) In fact the case was tried by both sides upon the theory that the issue as to the effect of the alteration was properly presented. As to the effect of a trial on such theory, see *Hilz v. Railroad*, 101 Mo. 36; *Bettes v. Magoon*, 85 Mo. 580. (5) Our statutes require the rate of interest when in excess of six per cent to be expressed in writing. 2 R. S. 1889, sec. 5973. And when a note is altered by a rate of interest which is required to be in writing, consent thereto on the part of the maker must be given in writing to make it effective. *Swift v. Barber*, 28 Mich. 503. (6) And when a deed of trust or mortgage, which has been acknowledged, is afterward altered by the beneficiary therein, or his agent, a reacknowledgment thereof by the grantor is necessary when such grantor's consent is sought to be shown in such alteration. 1 Jones on Mortgages [4 Ed.], sec. 91; *Tillon v. Ins. Co.*, 7 Barb. 564; *Acker v. Ledyard*, 8 Barb. 514; approved in *Gleason v. Hamilton*, 138 N. Y. 358. (7) In the case last cited it is held that the alteration of a mortgage by a stranger without the consent of the beneficiary will not invalidate it. But the alteration in the case at bar was made by James Brim, the party directly interested in the note and to be benefited thereby. As to the effect of the alteration of a mortgage or deed of trust, see, also, *McIntyre v. Velte*, 25 Atl. Rep. 739; *Walton Plow Co. v. Campbell*, 52 N. W. Rep. 883; *Meyer v. Huneke*, 51 N. Y. 412; 1 Jones on Mortgages, secs. 90, 91.

*James C. Davis* for respondent.

(1) Even though the court had found that the figures were inserted in the note and deed without the knowledge and consent of the maker, yet during the ten years which the note had run prior to the beginning

of the suit, some thirty-five interest payments had been made on it and indorsed on its back and slips of paper attached to it; and it was shown by the evidence that the maker herself made one of these interest payments and inserted it on the back. This, in itself, would amount to a complete ratification. *King v. Hunt*, 13 Mo. 97; *Evans v. Foreman*, 60 Mo. 449; *Lammers v. Machine Co.*, 23 Mo. App. 471. (2) Appellants were not entitled to a jury trial, the proceeding being one in equity to enforce the deed of trust against the real estate thereby conveyed. See *Ruby v. Co.*, 21 Mo. App. 167; *Riley v. McCord*, 24 Mo. 265. (3) In case at bar no judgment for a deficiency or other personal judgment was rendered. The language of the decree expressly limits its effect to the property and expressly excludes any personal judgment against any party to the suit. *Hannah v. Davis*, 112 Mo. 99; *Wolfe v. Ward*, 104 Mo. 127; *Keith v. Bingham*, 97 Mo. 196. (4) Even the statutory remedies for the foreclosure of mortgages and deeds of trust are held to be equitable in their nature, and, therefore, not triable by jury. *Downing v. Ledue*, 23 Pac. Rep. 202; *Martin v. Martin*, 20 N. E. Rep. 763; *Wilson v. Johnson*, 43 N. W. Rep. 148; *Brighton v. White*, 27 N. E. Rep. 620.

MACFARLANE, J.—This suit is to foreclose a deed of trust made by defendant, Rachel B. Fleming to Richard Stumpf as trustee, conveying certain lots in the city of St. Joseph to secure a note for $4,000, payable to plaintiff, dated December 3, 1883, due January 1, 1887, and bearing interest from date at ten per cent per annum. The petition charged these facts and also that the note was due, and, excepting certain admitted credits, was unpaid, and that the trustee refused to act.

The petition charged in addition, a prior deed of trust on the same lots to secure an indebtedness of $1,300;

that on the said third day of December, 1883, defendant Rachel B., by quitclaim deed, conveyed the lots to her mother, Rachel Fleming, who afterwards, on the fifth day of November, 1892, died, being then the owner of the lots and in possession thereof, leaving the said defendant and others, as her heirs at law; that after the death of the said Rachel Fleming, Richard Stumpf, one of her heirs, conveyed his interest in the lots in trust to secure an indebtedness of $175; and that in June, 1883, the interest of James H. Stumpf, one of the heirs, was levied upon under writs of attachment against him.

The administrator of Rachel Fleming, her heirs, and the holders of the prior and subsequent liens on the land, were made defendants in the suit.

The petition prayed that an account be taken of the amounts due on the debts mentioned; that the interests and rights of the parties and priorities of said liens be ascertained and determined; that judgment be given foreclosing all the equities of redemption; that the land be sold and the proceeds thereof be applied to the payment of plaintiff's note, and, if any part thereof remained, that it be distributed as right and justice should require.

Defendant Rachel B. Fleming and the other heirs of Rachel Fleming deceased, denied under oath the execution of the note sued upon, and charged that there was no consideration therefor.

Defendants, by timely and proper application, demanded a jury trial of the issues, which was denied them by the court, and they duly excepted.

The evidence shows that, prior to the date of the note and deed of trust, the land belonged to one Carder; that Carder agreed to sell it to Mrs. Rachel Fleming and take, in part consideration therefor, some other real property, the balance in money, and in the

assumption of certain building claims on the property. The amount of money needed by Mrs. Fleming was ascertained to be $4,000. Mrs. Fleming had a husband, but he was not at the time living with her. To make the purchase it was necessary for Mrs. Fleming to borrow the $4,000 required.

James Brim, the father of plaintiff, had the money which he was willing to lend, and for security, to take a deed of trust on the lots. But he had a judgment for alimony in favor of a divorced wife standing against him which he desired to avoid paying.

In these circumstances it was concluded that Carder should convey the land to defendant Rachel B., an unmarried daughter of Mrs. Fleming, who should make the note and deed of trust to plaintiff, the son of the said James Brim, and should then convey the land to Mrs. Fleming.

On the third day of December, 1883, Mrs. Fleming and plaintiff went to the office of a lawyer and notary public, and had a note for $4,000 prepared, which was made payable to plaintiff on or before January 1, 1887, with interest from date at —— per cent per annum. A deed of trust was also prepared in the usual form, describing the note but leaving also a blank for the rate of interest. These papers were signed by Rachel B. Fleming and the deed of trust was acknowledged. A quitclaim deed was also prepared, signed, and acknowledged by the said Rachel B., conveying to her mother the property in question. The deeds and note were taken away by these parties.

In a day or two after these transactions, James Brim and Carder went to the home of Mrs. Fleming, on which occasion the negotiations were concluded. The money was paid by James Brim to Mrs. Fleming, which she paid to Carder for the land. A deed conveying the land to Rachel B. Fleming was delivered by

Brim v. Fleming.

Carder; the note and deed of trust were delivered to James Brim, and the quitclaim deed was delivered to Mrs. Fleming.

The deed of trust was recorded December 10, 1883, and at that time the blank in the description of the note was filled in with the figures 10, thereby making the note bear interest at the rate of ten per cent per annum. The note also had the blank filled with the figures 10, when introduced in evidence on the trial.

James Brim was introduced by the plaintiff as a witness. He testified that the note and deed of trust were handed to him by Mrs. Fleming in the presence of Rachel B. Fleming. He examined them and found that no rate of interest was specified in either. He called Mrs. Fleming's attention to the fact and she went to another room and got a pen and ink and one of the three inserted the figures 10 in the blanks. After that had been done he paid Mrs. Fleming the money and she delivered him the note and deed of trust. Witness thought the figures 10 were in his handwriting. This evidence was objected to at the time it was offered, and afterward, by motion to strike it out on the ground that Mrs. Fleming being dead James Brim was not a competent witness.

The court after hearing all the evidence found as a fact that "the figures ten (10) expressing the rate of interest in the note, and in the description thereof in the deed or trust, were inserted therein in the presence of, and by and with the knowledge and acquiescence of, defendant Rachel B. Fleming before the delivery thereof to plaintiff John L. Brim, and before the payment of the consideration thereof to said Rachel B. Fleming."

The other facts were found for the plaintiff and judgment was rendered accordingly. Defendants appealed.

I.   It was, after some question, settled at an early day in this state, that a proceeding to foreclose a mortgage, or deed of trust, under the provisions of our statutes, was one at law, and was not governed by the rules of procedure in equity. *Riley's Adm'r v. McCord's Adm'r*, 24 Mo. 268; *Fithian v. Monks*, 43 Mo. 517; *Keith & Perry Coal Co. v. Bingham*, 97 Mo. 196.

But, at the same time, it has been as well settled that courts of equity are not shorn of their jurisdiction to foreclose mortgages by reason of these statutory provisions. *Hannah v. Davis*, 112 Mo. 608, and cases cited.

Whether the proceeding is at law or in equity must be determined by the circumstances of the particular case, as they are disclosed by the pleadings, and the relief to be granted. It is said in the case last cited that "the question must be governed largely by the circumstances and equities of each controversy." The statute makes no provision except the general direction that the proceedings shall be subject to, and governed by, the law "regulating proceedings in civil cases." If, therefore, the proceedings for foreclosure are in equity the practice in equity cases must be followed. In such case, a party is not, of right, entitled to a jury trial.

Looking to the petition in this case we find that it charges the execution and delivery of the deed of trust which is sought to be foreclosed; a prior deed of trust on the same property; a subsequent deed of trust on an undivided interest in the property, and an attachment lien against the interest of one of the present owners of the equity of redemption. All the parties interested in the property and these liens are made parties to the suit. The prayer of the petition is that the rights of the parties and the priorities of the liens be ascertained and de-

clared, that the equity of redemption of all the parties
be foreclosed, that the property be ordered sold, and
for all necessary and proper orders. No judgment
over for deficiency was asked.

It would seem there could be no doubt, under
these allegations and the prayer of the petition, that
the suit is in equity, and the court, therefore, had the
right to refuse a jury trial.

II.   Objection was made to the competency of
James Brim, as a witness, to testify in regard to the
time and manner of making the alterations, on the
ground that Mrs. Fleming was dead. This question
involves the construction of the proviso of the statute
which removes the disability of a party to testify in a
civil action on account of his interest in the event of
the same. The statute, after declaring that no person
shall be disqualified as a witness in any civil suit or
proceeding, by reason of the event of the same, as a
party, or otherwise, provides that "in actions where
one of the original parties to the contract or cause of
action in issue and on trial is dead  *  *  *  the other
party to such contract or cause of action shall not be
admitted to testify either in his own favor or in favor
of any party to the action claiming under him." R. S.
1889, sec. 8918.

Mrs. Fleming was not a party to the contract in
issue and on trial, but she was the agent of her daughter
in whose name the contract was made. Neither was
James Brim a party to the contract, though he was the
agent of his son, in whose name the contract was made.
The entire transaction, from beginning to end, was
conducted by these agents; indeed they were the real
parties interested though Mrs. Fleming, being at the
time a married woman, was not competent to make
the contract in her own name.

The statute has been held to exclude one party to the contract or cause of action when the agent of the other party, by whom the contract was made, is dead. In a recent case, after referring to a number of decisions, in which the application of the statute was considered, this court said: "An examination of the case will show that a 'party to the contract' has been construed to mean the person who negotiated the contract rather than the person in whose name and interest it was made." *Banking House v. Rood*, 132 Mo. 256.

Thus we find it has been expressly held that if both parties to a contract be living, one of them will not be competent to testify if the agent who negotiated the contract for the other be dead. *Williams v. Edwards*, 94 Mo. 447.

This ruling, if literally followed, would exclude James Brim as a witness. But to give that construction to the statute, its spirit rather than its letter has been taken. The primary object of the statute is to remove the common law disability of an interested party to testify. The exception is intended to avoid the injustice that would arise in admitting the testimony of one party when the other is dead. In case that injustice does not exist in any case, the exception would not apply.

In this case neither party to the contract was dead, and under a literal reading of the statute James Brim would be a competent witness whether he was acting for himself or as agent for his son. Did such facts exist as would require the application of the equitable construction of the statute in order to avoid injustice? The court finds that Rachel B. Fleming, the party in whose name the contract was made, was present during the entire negotiation under which the blanks in the note and deed of trust were filled. While the authority to make the alteration was given by her agent,

she had knowledge of and was competent to testify to, what transpired.   It is true she testified that no consent was given, and that the subject was not even discussed in her presence, but it was satisfactorily shown that the papers were delivered in her presence and the evidence of James Brim was confined to what was then said and done.   He testified that consent was given and the blanks were filled at that time.   The evidence was conflicting but that did not affect the competency of the witness.   There was no reason for excluding the evidence and the witness was competent to testify.

III.   The court found as a fact that filling the blanks in the note and deed of trust, so as to make them express the rate of interest the note was intended to bear, was done with the knowledge and consent of the payor and grantor before delivery, and before the consideration therefor had been paid.   This finding we think supported by the weight of the evidence.   Delivery was an act essential to the perfection of those instruments as binding obligations.   Before delivery the payee might have required the execution of a new note before paying the consideration, but instead of doing this, it was competent for the parties to supply the omission in the note, by filling the blank, so as to make it conform to the agreement.   Indeed, this might have been done, with the consent of the maker, after delivery, without affecting the validity of the note. The note, as completed, would become the contract of the parties, and the agreement to pay ten per. cent interest would be in writing as required by statute.

It is insisted that the deed of trust could not be altered in the particular shown, even with the consent of the grantor, without a reacknowledgment.

There would be force in this argument if an acknowledgment were necessary to make the deed effect-

ive to pass the title to the grantee. But this is not necessary under our statute concerning conveyances. An acknowledgment of a deed is necessary in order to entitle it to go upon record, but it is not necessary to its validity between the parties as an effective conveyance. So it has been expressly held by this court that blanks, in an executed deed, may be filled by one having parol authority to do so from the grantor. The court followed and approved this declaration from Mr. Justice NELSON in *Drury v. Foster*, 2 Wall. 24: "We agree—if she" (the grantor, in that case a married woman) "was competent to convey her real estate by signing and acknowledging the deed in blank, and delivering the same to an agent, with an express or implied authority to fill up the blank and perfect the conveyance—that its validity could not well be controverted." In that case a mortgage had been executed in blank, both as to the name of the mortgagee, and the consideration. *Field v. Stagg*, 52 Mo. 541; *Hammerslough v. Cheatham*, 84 Mo. 20; *McQuie v. Peay*, 58 Mo. 57.

The alteration complained of here was made before delivery and with the consent of the grantor and the validity of the conveyance was not defeated thereby. Judgment affirmed. All concur, except ROBINSON, J., who is absent.

---

,135  608
153  317

135  608
f85a 204

135  608
88a 362

135   608
94a 8 55

135   608
173  2 72

135   608
101a 4 598