MOSES W. LAWSON'S ADMINISTRATOR, Respondent, v. S. M. CHAPMAN, Appellant.

### St. Louis Court of Appeals, April 18, 1899.

Deed of Conveyance to Land: ESTOPPEL. In the case at bar Lawson by his conduct would, if living, be estopped, and his heirs claiming under him are estopped to set up any claims to the lands, because Lawson authorized appellant to make the sale. He did sell and by the bringing of this suit Lawson ratified the sale, and the equitable title of the Lawson heirs is in the purchaser, and as to him the heirs of Lawson are estopped to set up adverse title as against Vesey the purchaser.

*Appeal from the Dunklin Circuit Court.*—HON. JOHN G. WEAR, Judge.

AFFIRMED.

WILSON CRAMER for respondent.

The omission of the name of a grantee in the deed executed and delivered by Lawson to Chapman does not render the deed void. Lawson authorized Chapman in the letter inclosing the deed to insert the name of a grantee in case he succeeded in selling, and he was thereby fully warranted in putting in the name of A. J. Vesey, the purchaser, as grantee. Field v. Stagg, 52 Mo. 534; Otis v. Browning, 59 Mo. App. 326; Brim v. Fleming, 135 Mo. 597. The deed was duly acknowledged, but the officer taking the acknowledgment, failed to sign the certificate of acknowledgment. This does not affect the validity of the deed. An acknowledgment is not essential. A deed is good between the parties though not acknowledged. Harrington v. Fortner, 58 Mo. 468; Chandler v. Bailey, 89 Mo. 641; Wilson v. Kimmel, 109 Mo. 260; Brim v. Fleming, 135 Mo. 597. The alleged defects in the

deed would have been no defense in an action against Vesey for the purchase price. How can they be to Chapman, who, as Lawson's agent, received Vesey's money for the land? Cooley v. Rankin, 11 Mo. 642. Chapman's pretense that he sold only the interest he had in the land is a mere subterfuge. His deed to Lawson was of record and effectually cut off all of his interest. His own letters proved that he acted as the agent of Lawson, and his testimony shows that he sold Lawson's land to Vesey at forty-one cents per acre. The Jesuitical suggestion that Lawson still owns the land, because of the defects in the execution of the deed, although Chapman, as his agent, received Vesey's money for it, ought not to protect Chapman, and can not avail Lawson's heirs, even if they did not spurn the suggestion, as their honorable father did. The transaction between Chapman, as the authorized agent of Lawson, and Vesey, the purchaser, have created equities in favor of the latter which can be enforced in the courts.

WOOD & DOUGLASS, E. M. CROSSMAN for appellant.

To sustain a count for money received by the defendant for the use of the plaintiff, it is necessary to show that the defendant has obtained possession of money or received something as money, which *ex aequo et bono*, belongs to plaintiff. Winningham v. Fancher, 52 Mo. App. 458. The question in this case is, whether the money received by defendant for "all his right, title and estate" in certain lands belongs *ex aequo et bono* to plaintiff. The title to the land of plaintiff which it is claimed in the petition that defendant sold was never divested out of plaintiff. The alleged quitclaim deed from Lawson and wife to ——— is no deed, and did not affect plaintiff's title. A deed to be good must designate a guarantee. Coke on Littleton, 35b; Arthur v. Weston, 22 Mo. 378; Dowthitt v. Stinson, 63 Mo. 268. The plaintiff's land not having been sold and disposed of by defendant, but being still owned by plaintiff, he is not entitled to recover anything

as the price thereof from defendant. The court erred in ad-mitting in evidence the so-called quitclaim deed from Lawson and wife to ————. No grantee being named the paper was not a valid instrument, and had no effect to deprive plain-tiff of any right, title or interest in his land. See authorities, *supra*. This paper not being acknowledged could not bar the wife of her dower. R. S. 1879, secs. 669, 670, 2197; R. S. 1889, secs. 2396, 2397, 4525; Rannels v. Gerner, 80 Mo. 474.

BLAND, P. J.—After the institution of his suit, Moses W. Lawson died intestate and Thomas M. Doug-lass was appointed and qualified as administrator of Lawson's estate, and as such was made party plaintiff. In 1888, Lawson owned nine hundred and forty-six and ninety-one one-hundredths acres of swamp land in Dunklin county, Missouri, and the defendant owned in the same county nine thousand four hundred acres of the same quality of land and other swamp lands in Stoddard county. In 1886 or 1887 defendant told Lawson he was about to sell his swamp lands and that if Lawson wished to sell his, he thought he could put them in with his own, and that he would do so if he could without charge to Lawson. In 1888 or 1889 defendant wrote Lawson that he had not sold the lands, but expected to do so, and if he, Lawson, still wanted to sell and would send him a power of attorney he would try to put in his lands. Lawson made out a quitclaim deed describing all the land, leaving the name of the grantee blank, which he and his wife signed, but did not acknowledge, and sent by mail to defendant, the receipt of which was ac-knowledged by the defendant by letter dated October 12, 1888, which reads as follows:

"Dear Mr. Lawson:—I have yours of the 8th inst. in-closing deed to land. I have not yet completed sale, but

think I will in the near future, and if so, will put your land in and account to you.                    Your friend,

                    "S. M. Chapman."

On June 26, 1890, defendant and wife executed and delivered a deed to Allen J. Vesey, of Fort Wayne, Indiana, to a large quantity of land situated in Dunklin county, including the lands of Lawson, for a consideration, as expressed in the deed, of $10,935; this deed contained no covenants of warranty. Defendant made no report of the sale to Lawson, who did not ascertain that the sale had been made, until December, 1891, when he discovered the fact from an examination of the records in the recorder's office of Dunklin county. On this discovery he immediately wrote defendant for information concerning the matter. In answer to this letter defendant on December 25, 1891, wrote Lawson, saying he would see him and explain when at Kennett court the first of the following month. Lawson, however, did not see defendant, until the following June or July, when they had an agreement that defendant received $355 for Lawson's lands, after deducting commissions, etc., and defendant gave Lawson a claim of $355, according to Lawson's deposition—$255, according to defendant's evidence, against the estate of one Schultz, deceased, and asked Lawson to collect the claim and apply the proceeds to what defendant owed him on account of the land sale. Lawson was unable to collect the claim, and so wrote defendant and asked that he pay for the land. In answer to this letter defendant on August 11, 1892, wrote Lawson as follows:

"Mr. M. W. Lawson, Kennett, Mo.

"Dear Sir.:—I returned home from court at Corning last night to find your letter of a few days ago, replying to which will say, send the voucher (Schultz claim), with quitclaim deed made to me, and I will send you draft for face of voucher. I am sorry the matter was not settled by Mrs. Schultz at probate court as we expected. Yours truly,

                    "S. M. Chapman."

Lawson replied by letter stating that he did not think Chapman was the proper man to have the deed to the lands, that it should be made to the man who had bought and paid for the land. On January 30, 1893, Chapman replied as follows:

"Mr. M. W. Lawson, Kennett, Mo.

"Dear Sir:—I have your late letter inclosing allowance vs. Schultz estate. Referring to my letter to Mrs. Schultz, you say "you tried to make the impression with Mrs. Schultz" that I had violated my contract and acted in bad faith with you. How could I think otherwise? On August 11, I wrote you saying "send voucher with quitclaim deed to me and I will send you draft for face of voucher," instead of doing so, you wrote a very offensive letter indicating that I am little better, if any, than the Dalton or James gang; and after refusing to do as requested, say, "If I should make deed to you, I would convey title to you." Yes, and this was what I was offering to pay for, and the only thing for which you claim a right to the voucher. The title, any lawyer knows would inure to Mr. Vesey, but whether that would have been true or not was no concern of yours. Before I take any further action in this matter, I will have to know something more about the disposition made of this land. In your late letter you refer to our friendship, etc. Yes, until your very insulting letter I was, in truth your friend.            Yours truly,

"S. M. Chapman."

On this testimony the cause was submitted to a jury on appropriate instructions, who returned a verdict for plaintiff, on which an appropriate judgment was rendered, from which defendant duly appealed.

Upon what theory of law or equity the appellant expects to hold the money he received for Lawson's lands and to keep that which rightfully belongs to Lawson's estate and which he was enabled to receive because of the trust and confidence Lawson had reposed in him as his agent, to sell the lands, is beyond our ability to grasp. Chapman was

Lawson's Adm'r v. Chapman.

authorized by Lawson to sell the lands; he did sell them and received the purchase price; the money received was not his money, but Lawson's; he seems to claim a right to hold the proceeds of the sale until Lawson conveys the lands to him; what right has he to a conveyance? He did not STATEMENT. buy the lands of Lawson. Is it because he made his own deed conveying the lands to the purchaser—that deed is void of all warranties? A deed to him would not inure to the benefit of the purchaser and he can not require it to protect his warranties, for he made none. Lawson's heirs are bound on demand of the purchaser Vesey to make a deed to him because the sale by Chapman as Lawson's agent was in legal contemplation the act and sale of Lawson. What one does through an authorized agent, he does by himself. It would seem that Chapman, who is a lawyer, wants either the land or its purchase price, and that he is not willing to surrender the latter, until he has safely in his possession a deed for the former. He is not entitled to either, and can not have either.

Some minor and unimportant errors crept in the record during the progress of the trial; these are unnecessary to notice, in view of the undisputed facts, which leave no possibility of doubt that the judgment is for the right party, and should be affirmed. Judgment affirmed. All concur.

ON MOTION FOR REHEARING.

BLAND, P. J.—By a more critical examination of the transcript we discover that the deed from Chapman and wife does contain a clause whereby Chapman warrants the title to the premises conveyed to Vesey (including the Lawson lands). A brief restatement of the salient facts in the record is a necessary predicate to an understanding of the conclusions reached. They are as follows: Lawson first verbally authorized Chapman to sell his lands. Afterwards, when informed

VOL. 79 app—40

by Chapman that he was about to make a sale, Lawson made out a quitclaim deed to the lands leaving the name of the grantee blank. This deed he and his wife signed, but did not acknowledge, and transmitted to Chapman with written authorization to Chapman to write in the name of the grantee when he should effect a sale. Chapman received the deed and retained the same. He afterwards made a sale of the lands, and he and his wife made a deed conveying them to the purchaser Vesey, which deed and the Lawson quitclaim deed were both placed on record, but the name of a grantee was not written in the Lawson deed when recovered. Chapman did not report the sale to Lawson. After Lawson ascertained that Chapman had made the sale, he saw Chapman and they made a settlement, and Chapman agreed that $355 was due Lawson on account of the sale of the land and gave him an account against the estate of a deceased person to collect and apply on the debt. The account was not paid and Lawson demanded payment of Chapman. Chapman demanded a deed to himself from Lawson for the lands. This Lawson refused to make and Chapman refused to pay the purchase money to Lawson, hence this suit. Chapman had authority from Lawson to sell the lands and authority to write the name of the purchaser as grantee in the Lawson deed. He has that authority still, as it has never been revoked. Field v. Stagg, 52 Mo. 534; Brim v. Fleming, 135 Mo. 597. When the name of Vesey is written in, the deed will be effectual to convey all the interest Lawson had in and to the lands. Field v. Stagg, *supra;* Wilson v. Kimmel, 109 Mo. 260; Chandler v. Bailey, 89 Mo. 641; Harrington v. Fortner, 58 Mo. 468. Lawson by his conduct, would, if living, be estopped, and his heirs claiming under him are estopped to set up any claim to the lands, for Lawson authorized Chapman to make the sale. Chapman did sell, and by the bringing of this suit Lawson ratified the sale, and the equitable title of the Lawson heirs is in Vesey, the purchaser,

ESTOPPEL.

and as to him the heirs of Lawson are estopped to set up adverse title, as against Vesey the purchaser. So that there is no apparent danger that Chapman can or will ever be called on to defend his warranty to Vesey against an adverse claim of the Lawson heirs, and there is no valid excuse for him to withhold the money he received for the lands. It is perhaps well enough to intimate that in our opinion when the judgment in this case is paid the administrator of Lawson's estate should report the facts to the proper probate court and ask for an order directing him as administrator of Lawson's estate to make a deed conveying the lands to Vesey; as the latter has bought and paid for the lands he should have both the legal and equitable title whenever the estate shall have received payment. Motion for rehearing overruled and judgment affirmed. All concur.