HANNAH *et al.*, *Appellants*, v. DAVIS *et al.*

### Division One, December 12, 1892.

1. **Deed of Trust:** DEFECTIVE ACKNOWLEDGMENT: NOTICE. A deed of trust, defectively acknowledged, is valid between the immediate parties and those having actual notice.

2. **Vendor's Lien:** WAIVER: MORTGAGE. A vendor's lien for purchase money is not lost as to persons charged with notice by the taking of a mortgage on the same land to secure the vendee's notes for the price.

3. ———: VENDEE'S INTEREST: ATTACHMENT. Where such an incumbrance existed, plaintiffs attached the interest of the vendee and afterwards acquired that interest by judicial sale in the attachment suit. Meanwhile (after the attachment) the vendee surrendered possession to the vendor, on being released from the payment of the purchase money notes, and defendants now stand in place of the vendor. *Held*, that in equity the plaintiffs by the attachment seized no greater estate than was then owned by the vendee, and that that estate was not enlarged by the surrender of the land to the vendor and release of the vendee's notes as above.

4. **Prior Unrecorded Deed:** EXECUTION PURCHASER. In Missouri a deed made before a judgment and recorded before sale on execution thereunder carries the title as against an execution purchaser.

5. **Attachment:** EXECUTION. No greater interest in land is reached by an attachment levy than by a judgment.

6. **Mortgages:** FORECLOSURE. The jurisdiction at law and in equity for the foreclosure of mortgages in this state discussed.

7. **Equity:** REDEMPTION. A court of equity has the discretion, governed by the equities of each case, to name terms on which it will let in a party to redeem.

8. ———: ———: FORECLOSURE. A sale of the whole title is not invariably essential in equity to foreclose a right of redemption.

9. **Mortgagee:** RENTS AND PROFITS. A mortgagee in possession must account for rents and profits.

*Appeal from Atchison Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*Lewis & Ramsey* for appellants.

(1)   The court erred in finding for and in rendering judgment in favor of defendants.   Under the pleadings and evidence the judgment should have been for plaintiffs.   *First*.   Plaintiffs had the right under our statutes to levy upon the land in question whether Mills' interest was legal or equitable.   Revised Statutes 1889, sec. 4915; *Eddy v. Baldwin*, 23 Mo. 588; *Neff v. Seely*, 49 Mo. 209; *Matson v. Capelle*, 62 Mo. 235. *Second*.   As both plaintiffs and defendants claimed through the same person, Frank D. Mills, it was unnecessary to prove the title back of him.   Plaintiffs' attachment and sale took whatever title Mills had, and Moore, his subsequent grantee, could not show any other outstanding title.   *Mathews v. Lecompt*, 24 Mo. 545; *Smith v. Lindsey*, 89 Mo. 76.   *Third*.   That plaintiffs had a *prima facie* case is not seriously questioned.   (2)   The court erred in attempting to take an accounting, and in subrogating defendants to the Hendricks deed of trust, and in strict foreclosure of same.   *First*.   Defendants in their answer did not ask for subrogation or foreclosure, and did not offer an account or state one.   *Second*.   Even if there had been anything to foreclose, a strict foreclosure was not permissible under the laws of this state.   Revised Statutes 1889, sec. 7078; *O'Fallon v. Clopton*, 89 Mo. 284. *Third*.   As Hendricks, the trustee of the deed of trust, if still in force, was the legal owner, a complete foreclosure could not be had without his being made a party, which was not done.   *Baker v. Nall*, 59 Mo. 265; *Siemers v. Schrader*, 88 Mo. 20.   *Fourth*.   Defendants in their answer show that Mills sold and released his equity of redemption in the mortgaged land to said Moore in the payment of said notes secured by said deed of trust "by quitclaim deed, dated December 4,

1884," and there is nothing to show that it was done by mistake or error or through any fraud, nor do they ask to have it re-established or reinstated, being satisfied it was not a subject of foreclosure or other equitable relief. *White v. Todd*, 10 Mo. 190; *Atkins v. Augest*, 46 Mo. 515; *Collins v. Stocking*, 98 Mo. 290. (3) The court under its own findings should have given judgment for plaintiffs, and it erred in not doing so. Defendants had no equities to be protected, and the court erred in finding for them. *Bunn v. Lindsay*, 95 Mo. 250; *White v. Todd*, 10 Mo. 190; *Atkins v. Augest*, 46 Mo. 515.

*Hunt & Bailey* for respondents.

(1) The whole spirit and purpose of the action of ejectment is to try title. *Clarkson v. Stanchfield*, 57 Mo. 573; *Dunn v. Miller*, 8 Mo. App. 467. (2) The party in possession is considered to be the owner until the contrary appears, and plaintiffs must recover upon the strength of their own title and not upon the weakness of the defendants' title. Adams on Ejectment [4 Ed.] p. 33, and cases cited in foot note on page 43; 2 Greenleaf on Evidence [13 Ed.] secs. 303, 304, 307, p. 295; *Simmons v. Schrader*, 14 Mo. App. 347; s. c., 88 Mo. 20; *Foster v Evans*, 51 Mo. 39. (3) Although the trust deed was acknowledged by the trustee, yet nevertheless it is a good deed or mortgage between the parties, and will bind them and all those holding under them or those who purchased with notice. *Stevens v. Hampton*, 46 Mo. 404; *Doil v. Moore*, 51 Mo. 589; *Black v. Gregg*, 58 Mo. 565; *Siemers v. Kleeburg*, 56 Mo. 196; *Bennett v. Shipley*, 82 Mo. 448; *Cooley v. Rankin*, 11 Mo. 642; *Caldwell v. Head*, 17 Mo. 561; *Williams v. Bank*, 72 Mo. 292; *Martin v. Nixon*, 92 Mo. 26. (4) The attachment suit

was not brought until the seventh day of October, 1884, ten months after condition . was broken, and the legal title had vested in the trustee or mortgagee. *Reddick v. Gressman*, 49 Mo. 389; 1 Jones on Mortgages [3 Ed.] sec. 39, foot page 28.   (5)   It is a well-settled principle that attaching creditors acquire no better right or title to the property attached than the debtor in the attachment had in the property attached at the time of the attachment.   Drake on Attachment. [2 Ed.] secs. 222, 223, foot page 169; *Ensworth v. Thomas*, 50 Mo. 477; *Lackey v. Seibert*, 23 Mo. 85; *Huxley v. Harrold*, 62 Mo. 517; *Mann v. Best*, 62 Mo. 491; *Craven v. Christie*, 53 Mo. 287.   (6)   Moore had. a vendor's lien upon that land for the purchase money, and it exists independent of any agreement between the parties.   It is treated as a constructive or implied trust and raised by implication, and is not within the operation of the statute of frauds; therefore, if our mortgage was wholly ill, yet would the plaintiffs be precluded from recovering in this action; for they purchased with full knowledge of the vendor's lien. And they can in no sense be said to be innocent. purchasers.   *Pratt v. Clark*, 57 Mo. 189; *Bennett v. Shipley*, 82 Mo. 448; *Gill v. Clark*, 54 Mo. 415.   (7) One who buys.land subject to vendor's lien, with notice of the same, takes it subject to the same.   *Bronson v. Wanzer*, 86 Mo. 408. By receiving a mortgage to secure the purchase money the vendor does not waive his lien. *Linvill v. Savage*, 58 Mo. 248.

BARCLAY, J.—Plaintiffs began this action in ejectment in April, 1888, against Mr. Davis, defendant, tenant in possession of a tract of land in Atchison county.   The other defendants voluntarily came in as. the heirs and personal representatives of Mr. Moore,.

who died in 1887, after the occurrence of the principal events out of which this litigation grows.

All the defendants stand upon the rights acquired by Mr. Moore.

Shortly stated, the case is this: In 1883 Mr. Moore owned the tract of land now in litigation and conveyed it to Mr. Mills by deed of general warranty. At the same time he took from Mills a deed of trust (in the nature of a mortgage) on the same property to secure notes of Mills, maturing during seven years, at intervals of one year each, for various sums aggregating $1,950, the full amount of the purchase money (mentioned as the consideration in the deed of Moore to Mills). The notes carried interest at ten per cent., compounded annually; and the terms of the security were that, in default of the payment of any of the notes or interest, the whole debt should become at once payable. The first note matured in January, 1884, and was not paid.

In October, 1884, the present plaintiffs levied an attachment on this property in an action against Mills, which resulted in a judgment against him for $230.18 in October, 1885. Under the judgment plaintiffs had the land sold on execution, and became the purchasers in January, 1886. Their claim of title rests upon the sheriff's deed, following that sale.

In December, 1884, some time after the default upon the first note of Mills (and after Moore had likewise begun an attachment suit against him on the notes), he executed and delivered to Moore a deed of quitclaim to this property for the recited consideration of $1 (the real one being $25, as shown by the evidence). In this instrument occurs the following language in addition to the ordinary words of conveyance, viz.:

"This deed is given for, and in consideration of, the purchase money for said lands, and in full payment of the notes executed, and the mortgage or trust deed given on said lands by grantor to grantee of record in the county of Atchison and state of Missouri, in the recorder's office thereof, which said notes and mortgage are now on file in a suit in the office of the clerk of the circuit court in and for said Atchison county, wherein said grantee is plaintiff and said grantor is defendant."

Upon the delivery of this deed Mills gave up possession to Moore. The latter afterwards rented the premises to defendant Davis as tenant, and he remained in possession, under Moore or his heirs, until the present action was brought.

At the execution sale in 1886 (when plaintiffs bought Mills' interest in the land), an attorney, acting for defendants, gave public notice "of all the facts connected with the Moore chain of title existing at the time of said sheriff's sale" (according to the bill of exceptions on this appeal).

The conveyances above mentioned were all recorded about the time of their respective dates; but it should be noted that Mills' deed of trust to Moore, as beneficiary, was acknowledged before the trustee, acting as notary public.

The most of these facts relied upon by defendants were set up as an equitable defense in their answer, and the court was prayed to adjudge their rights and equities to be superior to those of plaintiffs, and that the premises be first applied to the payment of the mortgage debt, for general relief, etc. To that defense plaintiff made reply, admitting the giving of the Mills notes for the purchase money, secured by the deed of trust; but charging, in substance, that these notes had been paid, satisfied and discharged, and praying for judgment and

for all other, further or different relief to which they might be entitled and equity would allow."

A trial was had before Judge ANTHONY, who, after finding the facts above indicated, adjudged that defendants had an interest in the land to the extent of the unpaid purchase money and interest, amounting to $2,452.17, after charging them with rents and profits (fixed at $160, yearly), from the time Moore took possession, and that plaintiffs had the equity of redemption; accordingly a decree was entered September 30, 1889, that plaintiffs might redeem the land by paying the last-named amount of the purchase money on or before the fourth of December, following; otherwise to stand debarred from setting up any right or interest therein.

From that decree plaintiffs appealed in the ordinary way.

I.  It is not necessary to discuss the effect of the taking of acknowledgment of the deed of trust by the trustee.  Conceding that it impaired the force of the record of that deed as constructive notice to purchasers, etc., it must still be held that the instrument without acknowledgment is good between the immediate parties and those having actual notice of its terms. *Bennett v. Shipley* (1884), 82 Mo. 448.  Plaintiffs admit having such notice, so that question drops out of view.

II.  The leading proposition of plaintiffs is that, as the quitclaim of Mills to Moore was given in consideration of the discharge of the purchase-money notes and of the security therefor, defendant's title under the attachment is better than that of plaintiffs.

But here plaintiffs are confronted by the rule that Moore's (the vendor's) lien for purchase money was not lost (as to subsequent takers with notice) by the mere acceptance of a mortgage or deed of trust on the same property to secure the vendee's notes for the price.

*Morris v. Pate* (1861), 31 Mo. 315; *Linville v. Savage* (1874), 58 Mo. 249; *Rogers v. Tucker* (1888), 94 Mo. 346. We take this to be now the settled law in Missouri, without reopening the subject.

While that lien was in full force, the purchaser surrendered his interest and possession to the vendor in consideration of the cancellation of the debt for the purchase money. Is that transaction to be treated in equity as payment of the price? Is not its effect merely to release the debtor from his personal liability without enlarging his prior interest in the property?

Equity deals with the substance rather than the outward form of business affairs, and could scarcely be expected to accept the mere rescission of a contract of sale as equivalent to its full performance. Yet that is the purport of plaintiff's contention.

While such a transaction as this quitclaim evidences should not be held to deprive third parties of rights already acquired against the vendee, it certainly cannot justly be considered to confer on a purchaser of the vendee's interest (with notice of the real state of facts) a greater estate in equity than the vendee enjoyed under his unperformed contract to buy. It is not pretended that the price of the land was ever in fact paid. But plaintiffs seek to establish a better standing than Mills enjoyed under his contract to purchase, because the vendor allowed him to cast off the personal burdens it imposed. The quitclaim deed does not purport to confer any new estate or right on Mills. Had it simply released him from the notes and deed of trust, leaving intact the title first conveyed to him, the position of plaintiffs would be altogether different. But its plain object, on the contrary, was to terminate and surrender his rights under the first conveyance and to remit Moore to his original possession. Such an arrangement, in the circumstances, cannot be viewed

from any standpoint, so as to make it bear the sem-
blance of a payment of the purchase money.   Certainly
it does not tend to show an intent, on the part of either
party, that the title should pass to Mills without pay-
ment for it.

The trial court held that plaintiffs, by virtue of
their attachment and purchase thereunder, acquired
the right to redeem against the vendor's lien on paying
the agreed price, notwithstanding Mills' attempted sur-
render of his rights by the quitclaim deed.   This was as
favorable a position as plaintiffs were entitled to main-
tain.   In *Davis v. Ownsby* (1851), 14 Mo. 170, this
court held that a valid deed made before judgment,
but afterwards recorded before sale on execution,
carried title against a purchaser at the execution sale.
That opinion has been so long accepted that we decline
to re-examine the rule it states.   *Parks v. Bank* (1889),
97 Mo. 133.   By an attachment no greater estates or
interests in land are reached than by a judgment.   So
that plaintiff's position is not improved by reason of
their attachment lien, they having received notice of
all the facts above stated, affecting the rights of Mills
before the execution sale at which they purchased his
interest in the land.

3.   Plaintiffs further complain of the action of the
trial court in fixing, by decree, a date within which
they should redeem, quoting a remark from the opin-
ion in *O'Fallon v. Clopton* (1886), 89 Mo. 290, to the
effect that strict foreclosure "has never prevailed in
this state," citing *Davis v. Holmes* (1874), 55 Mo. 349.

That general remark we think was not intended,
and certainly should not be held, to forbid the naming
of a date for payment in every instance where parties
seek the aid of equity to redeem against liens of various
kinds.

In respect to ordinary mortgages, the statutory

procedure in this state contemplates a sale as the means of foreclosure. Revised Statutes, 1889, secs. 7078–7087, 7089. Positive law to that general purport has been in force since 1807, long prior to the admission of Missouri to the union, and prior to the establishment of any court of chancery here. 1 Territorial Laws, p. 182; *Carr v. Holbrook* (1822), 1 Mo. 240.

Notwithstanding the jurisdiction for foreclosure under statute in courts of law, it has been ruled that those invested with chancery powers have likewise jurisdiction to enforce mortgages, there being no intent to exclude such jurisdiction apparent in the statutory provisions touching foreclosure. *McClurg v. Phillips* (1872), 49 Mo. 315; *Keith & Co. v. Bingham* (1888), 97 Mo. 212. In exerting that jurisdiction it may well be that, in deference to the maxim, equity follows the law, courts of equity should conform to the statutory course of foreclosure as far as it can be harmonized with the practice of such courts. As to which compare *Riley's Adm'r v. McCord's Adm'r* (1857), 24 Mo. 265. But it cannot be declared, as an inflexible rule, that a sale is essential in every case to put an end to equitable rights of redemption. That question must be governed largely by the circumstances and equities of each controversy. Such is the plain meaning of the judgment pronounced in *Martin v. Ratcliff* (1890), 101 Mo. 254.

A court of equity certainly has the discretion to name terms on which it will let in a party to redeem. *Cowing v. Rogers* (1868), 34 Cal. 648. This court has frequently applied that proposition to varying states of facts. *Giraldin v. Howard* (1891), 103 Mo. 40; *Cobb v. Day* (1891), 106 Mo. 278; *Gooch v. Botts* (1892), 110 Mo. 419; *Turner v. Johnson* (1888), 95 Mo. 431. In the decision last cited the learned judge who wrote the opinion of the court in *O'Fallon v. Clopton* concurred,

which fact confirms the views above indicated as to the proper significance of his remark under discussion.

In the case at bar the plaintiffs sue in ejectment. The defense amounts in substance to the assertion of defendants' standing as mortgagee in possession, which, as we hold, they are entitled to maintain. The reply of the plaintiffs prays general equitable relief, and, by a liberal construction, may be treated as putting forward a claim to redeem. At least the circuit judge so treated it, and defendants have not excepted to that view of it. So it was proper for the trial court, in adjudging that plaintiffs might redeem, to name a reasonable time within which they should do so.

As the date then fixed has, however, expired, pending this appeal, it will be necessary to modify the decree in that particular, which we do by naming March 1, 1893, as the date, on or before which plaintiffs may redeem by paying the amount of the indebtedness found by the decree of the circuit court, with interest thereon at six per cent. per annum, less the rents and profits (at the monthly rate already found) since the entry of the former decree until redemption; and adjudging that, in default of such redemption, the plaintiffs' cause be dismissed; and that the plaintiffs pay the costs of these proceedings in both courts.

So modified, the judgment is affirmed, and the cause remanded with directions to re-enter the decree to the effect just stated, and for such further proceedings as may thereafter be just and conformable to the law as above declared. SHERWOOD, C. J., BLACK and BRACE, JJ., concur.