TUTTLE, Assignee of CURD et al., v. BLOW et al., Appellants.

**Division One, June 12, 1901.**

1. **Receiver: APPOINTMENT: APPEAL.** On appeal from an order of the trial court refusing to vacate an interlocutory order appointing a receiver, only that branch of the case is for review, that is, whether the bill is sufficient to call into action the power of the court to make the order. The court, on that appeal, will not examine the question, whether, upon final hearing, the relief prayed for should be granted.

2. ———: ———: ———: **NO EXCEPTIONS: DEMURRER: ANSWERING OVER.** And the appellate court will not look into the record to ascertain if the bill is sufficient to support the appointment of a receiver, etc., if no exceptions were saved in the lower court to the action of the court in appointing the receiver, or where the appellants have conceded the sufficiency of the bill for the purpose of a trial on the merits by answering over after their demurrer thereto has been overruled. In such case there is nothing before the court for review except the question of the jurisdiction of the trial court to make the order.

3. ———: **JURISDICTION OF CIRCUIT COURT: MORTGAGE.** Circuit courts in this State are courts of equity, having general original chancery jurisdiction, of which they are not shorn by the statute providing for the foreclosure of mortgages. They have jurisdiction in the matter of appointing receivers of mortgaged property for the protection of the mortgagees, and in suits for the foreclosure thereof.

4. ———: ———: **APPEAL: RIGHT TO ANSWER.** In this case, where defendants appealed without exception from the action of the trial court in refusing to vacate an order appointing a receiver, and that appeal is dismissed, they are given the right to refile their answers, which were dismissed as being filed out of time without leave, or to file amended answer if they prefer.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

APPEAL DISMISSED.

Vol 163 mo—40

*S. H. King* for appellants.

(1)   The allegations of the petition show that a court of equity is without jurisdiction, and notwithstanding their allegation to the contrary, they have a plain, adequate and complete remedy at law. R. S. 1889, sec. 7; secs. 7078, 7084, 7085, 1993, 2207, 7085. Where a statutory remedy exists, equity will not interfere or assume jurisdiction. Schlector's App., 60 Pa. St. 155. A proceeding to foreclose a mortgage under the statute is a legal remedy. 135 Mo. 604. A trademark can not be mortgaged. "A patent may be mortgaged, but it is not understood how the intangible, incorporeal, perhaps personal right of usage of an emblem of commerce can be mortgaged." Brown on Trade-Marks, sec. 153, note. In this case the pleader seeks to supply the omissions and defects of the mortgage by averments; this can not be done. The exhibit or mortgage, which is transcribed in full into the petition, must control, and not the averments of the petition. Hill v. Hill, 6 Geo. (Miss.) 162; Westcott v. Gifford, 5 N. Y. Eq. 34; McVeigh v. Valencia Cigar Co., 32 Patent Office Gazette, 1125. The evidence of the intention, as contradistinguished from that expressed in the mortgage, can not prevail in this suit. McGuire v. Stephens, 42 Miss. 724. The court must apply the evidence to the language of the instrument. Greenleaf on Evidence (15 Ed.), sec. 277. Nor is there anything in said petition to authorize the order as made. High on Receivers (2 Ed.), secs. 112, 406, 12, 11, 17, 24, 106, 107, 109, 36; Jones v. Brinker, 20 Mo. 87; Vesquez v. Ewing, 24 Mo. 31; Congress Spring Co. v. High Rock Spring Co., 45 N. Y. 298. "A trade-mark can not descend to a man's legal representatives." Brown on Trade-Marks, sec. 362, p. 354. The Blows did not have an exclusive right in the trade-mark, and, therefore, could have conveyed no such rights to Edwin

Curd. Hoxie v. Chaney, 143 Mass. 597; Basset v. Percival, 5 Allen, 347. A trade-mark must, either by itself or by association, point out distinctly the origin or ownership of the articles to which it is attached. Stackenbury v. Ponce, 23 Fed. Rep. 450, citing 13 Wall. 511; Tailor v. Hoffman, 118 N. Y. 36. Courts of equity will not intervene by injunction in disputes between the owners of quack medicines. Kohler Mfg. Co. v. Beehorse, 59 Fed. Rep. 574. The registry of a trade-mark will be construed into the abandonment of the common-law trade-mark. Jewelers Mer. Agency v. Jewelers Pub. Co., 155 N. Y. 247; Kohler Mfg. Co. v. Beehorse, 50 Fed. Rep. 574. There is nothing in this case, nor alleged in the petition, to prevent the Blows from manufacturing and selling eyesalve as heretofore. Basset v. Percival, 5 Allen, 347; Chaswick v. Covell, 151 Mass. 190; Emerson v. Badger, 101 Mass. 86; Thompson v. Winchester, 19 Pick. 216. "A patent may be mortgaged, but a trade-mark, as such, can not be mortgaged." Brown on Trade-Marks, sec. 153, note. (2) The right to a trade-mark can not exist as a mere abstract right, independent of and disconnected with the business. It is not property, as distinct from, but only as incident to, the business. It can not be transferred except with the business. Ween v. Brayton, 152 Mass. 103; Chadwick v. Covell, 151 Mass. 195; Schneider v. Williams, 44 N. J. Eq. 301; Hoxie v. Chaney, 143 Mass. 597; Batcheller v. Thompson, 86 Fed. Rep. 632; Richter v. Reynolds, 59 Fed. Rep. 579; Hicks v. Knost, 94 Fed. Rep. 626; The LePage v. Russia Cement Co., 51 Fed. Rep. 943; Battle v. Finlay, 50 Fed. Rep. 106; Manufacturing Co. v. Trainer, 101 Fed. Rep. 54; Brown Chemical Co. v. Meyer, 139 U. S. 544; Fish Bros. Wagon Co. v. Fish Bros. Manfg. Co., 95 U. S. 461; Royal Baking Powder Co. v. Raymond, 70 U. S. 380; Marshall v. Pinkham, 52 Wis. 572; Russia Ce-

ment Co. v. LePage, 147 Mass. 210; Burton v. Stratton, 12 Fed . Rep. 696; Lawson on Good Will, p. 28.

*Dawson & Garvin* for respondents.

(1) This appeal, from an interlocutory order refusing to vacate an order appointing a receiver, should be dismissed. (a) Appellants are barred by their failure to appeal from an order made at a previous term refusing to vacate this appointment which was upon a similar motion to vacate. Windes v. Earp, 150 Mo. 605; Railroad v. Railroad, 149 Mo. 254; Sheldon v. Weeks, 2 Barb. 532; Lilly v. Menke, 143 Mo. 146. (b) No exceptions to the court's order were made at the time, as required by the statutes permitting such an appeal, and there is no bill of exceptions making either motion to vacate the order appointing a receiver, a part of the record. Rumsey v. Railroad, 154 Mo. 248; Windes v. Earp, 150 Mo. 605; Russell v. Railroad, 154 Mo. 433; Nichols v. Stevens, 123 Mo. 119; Monroe City Bk. v. Finks, 40 Mo. App. 370; Martin v. Estate of Nichols, 63 Mo. App. 346; Wolff v. Ward, 104 Mo. 145; Chance v. Jennings, 61 S. W. (Mo.) 179. (2) The appointment of a receiver is not the ultimate end and object of a foreclosure suit, but is merely a provisional or auxiliary proceeding, and there must be a pending suit. State ex rel. v. Ross, 122 Mo. 435; High on Receivers, sec. 1; R. S. 1889, sec. 2193; 20 Am. and Eng. Ency. of Law, p. 17. If this record is to be reviewed by this court, then only the questions of the jurisdiction of the trial court and the legality of its order, refusing to vacate the order appointing the receiver, should be considered. Glover v. Bond Inv. Co., 138 Mo. 417. The appeal prayed and granted is solely from "the judgment or decision of the court overruling the motion to vacate order appointing receiver upon petition and answer." (a) The cir-

Tuttle v. Blow.

cuit courts of this State are not shorn by the statutes of their ancient equity jurisdiction over foreclosure of mortgages. Bruin v. Fleming, 135 Mo. 604; Hannah v. Davis, 112 Mo. 608; Wolff v. Ward, 104 Mo. 146; McClurg v. Phillips, 49 Mo. 315. (b) This petition to foreclose a mortgage and determine the priority of collecting liens and for necessary and proper orders, is a proceeding in equity. Bruin v. Fleming, 135 Mo. 597; Dunham v. Stevens, 60 S. W. (Mo.) 1064; Draper v. Davis, 104 U. S. 349. (c) Courts of equity also exercise a peculiar jurisdiction in matters of accounting, and for the prevention of a multiplicity of suits. Biddle v. Ramsey, 52 Mo. 159.

*S. H. King* for appellants in reply.

That we are not required to make a motion for a new trial, or in arrest of judgment, or to bring this cause up to this court on a bill of exceptions in order to confer jurisdiction on this court to review the action of the lower court upon this appeal, is well settled by the following authorities: Hannah v. Hannah, 109 Mo. 240; Pelty v. Eichel, 62 Mo. 177; State ex rel. v. Chaney, 49 Mo. App. 511; Schottes v. Freeman, 81 Mo. 540; Randsome v. Cobb, 67 Mo. 375; Nordmans v. Hitchcock, 40 Mo. 178; Mills v. Thompson, 61 Mo. 416; Blount v. Spratt, 113 Mo. 54; Railroad v. Mahoney, 52 Mo. 467; Sweed v. Maupin, 65 Mo. 65; Lilly v. Menke, 126 Mo. 193; Baleson v. Clark, 37 Mo. 31.

*Shepherd Barclay* also for appellants in reply.

(1) It is said by our learned adversaries that the appellants are barred by the failure to appeal from a similar order at a prior term. It is shown by the record (of which a printed

copy is on file) that the two motions were filed at the same
(December) term, 1898; the first was founded on the defend-
ants' demurrer which the court overruled January 18, 1899,
the second was filed January 28, 1899, after defendants' an-
swer was put on file.   The latter motion was overruled Feb-
ruary 6, 1899, at the February term (the February term began
in that year, February 6, the first Monday of that month)..
The appeal was taken at the same February term, and we re-
spectfully submit that it was timely, in view of many well con-
sidered precedents with which Your Honors are so familiar in
your daily lines of duty that they are household words and need
not be cited at length.   (2)   The appeal involves the large
issue whether, under the terms of the mortgage sued upon, the
plaintiff is entitled to a receivership.   The powers of enforce-
ment which a mortgage or deed of trust contains, mark the
limits of the authority of the person who seeks to enforce such
a security.   This is elemental law, and requires no vindication.
2 Jones, Mortgages (5 Ed.), sec. 1778.   In the case at bar,
we claim that, under the express terms of the mortgage, the
plaintiffs had no right to take the property out of the hands of
the defendants and to establish a receivership, even if default
had been made in respect of payment of the debt secured.   And
this because the mortgage itself so declares.   In the teeth of
such provisions, how can the plaintiffs assert a right to take
possession of the property by a receiver before a sale is made
under the mortgage?   There is a valuable right in the posses-
sion of such property, and to deprive defendants thereof,
against the stipulations of the mortgage, no court may do, any
more than may the parties out of court, on such facts as are
here recited.   It was manifest error for the court to take the
property out of defendants' hands, on the facts shown in the
petition itself.   (3)   If the petition does not state a cause
of action no order of the sort here in issue, or even a final judg-

ment, can stand or be sustained. No exception or motion to review is necessary to permit such a question to be raised on appeal. This is now the settled law of the State, as is shown by the following well-known precedents. Lilly v. Menke, 126 Mo. 190; Ancell v. City of Cape Girardeau, 48 Mo. 80; McIntire v. McIntire, 80 Mo. 470; Childs v. Railroad, 117 Mo. 414; Bateson v. Clark, 37 Mo. 31; Jones v. Tuller, 38 Mo. 363; Smith v. Burrus, 106 Mo. 94; Union v. Conhaim, 40 Minn. 243; Schneider v. Williams, 44 N. J. Eq. 396; Kidd v. Johnson, 100 U. S. 620.

BRACE, P. J.—This is a suit in equity to foreclose a mortgage executed by the defendants, Julia W. Blow, William T. Blow, Jr., and Benjamin E. Blow, dated the seventeenth day of September, 1889, conveying to the said Edwin Curd "all their right, title and interest in a certain trade-mark for eyesalve which was duly registered in the patent office of the United States by William T. Blow of St. Louis, Missouri, and recorded in the patent office, and declared to be in force for thirty years from the twenty-fifth of February, 1873, which said trade-mark is numbered 1142 and is for the exclusive right for the manufacture and sale of T. L. Stephens' Chemical Eyesalve, as also all our right, title, and interest in the patent, and proprietary right in and to T. L. Stephens' Chemical Eyesalve," to secure the payment of eight promissory notes of that date executed by the said defendants, payable to the said Curd, seven of them each for the sum of three thousand dollars, payable in eighteen months, two, three, four, five, six and seven years, respectively, and the other for four thousand eight hundred and seventeen dollars and sixty-four cents, payable eight years after date, all bearing interest at the rate of eight per cent compounded annually, and all of which, together with said mortgage, and "the secret formula or recipe according to which

the said salve mentioned in the mortgage had been and was being manufactured, prepared and sold," it is alleged in the petition, were delivered to said Curd to secure the payment of an indebtedness to him by said defendants for money loaned in the amount evidenced by said promissory notes. In the petition filed June 10, 1898, and which is very voluminous (containing a facsimile and detailed description of said trade-mark, its history and the circumstances of its registration under trade-mark laws of the United States, which were afterwards held to be unconstitutional by the Supreme Court) the said mortgage is set out in full, as also a contract entered into between said defendants and James F. Ballard, dated June 20, 1896, by which said salve was to be furnished him exclusively for sale by the said defendants, at certain prices in certain quantities, within certain periods thereafter, continuing for four years after the twentieth of June, 1897, under which it is alleged the same is now being manufactured, prepared and sold, and all the consideration therefor received by the said defendants. It is further alleged in the petition that the indebtedness evidenced by said promissory notes except the sum of $8,940.94, paid generally thereon, at the dates set out in the petition, remains due and unpaid. That no payments have been made thereon since the sixteenth of August, 1897. That the plaintiffs are the owners and holders of said promissory notes, that they have been informed that Frederick W. Mott and Caroline Lueders claim some interest in said trade-mark under a mortgage executed by the said Julia W. Blow in 1883. That the said William T. Blow, Jr., is a non-resident of the State of Missouri. That the said defendants, mortgagors, are appropriating all the proceeds derived under this contract with the said Ballard, to their own personal use, and applying none on said indebtedness, and claim since they have been informed of plaintiffs' intention to forclose their said mortgage under the

Tuttle v. Blow.

power therein contained or otherwise, "that by reason of said trade-mark laws of the United States in force when said attempt was made to register said trade-mark thereunder as aforesaid by said William T. Blow having been declared unconstitutional and void prior to the execution and delivering of said notes and mortgage, plaintiffs' said mortgage conveys nothing as security for said debt described therein and secured thereby, and that a sale of the property rights mortgaged and pledged for the payment of said indebtedness would convey nothing to the purchaser, and threaten so to treat the same and to continue the manufacture and sale of said salve under said formula and to use said trade-mark thereon in so doing and otherwise after such sale. Plaintiffs further state that said defendants last aforesaid, their mortgagors, have failed to conduct the business of manufacturing and selling said salve with the use of said trade-mark for the uses and purposes aforesaid, in a reasonable, skillful and prudent manner so as to preserve the commercial value of said trade-mark so used in connection with the manufacture and sale of said salve, and of said salve manufactured according to said formula, and have through their mismanagement and bad judgment caused and allowed the demand for and trade in said salve, so prepared and sold with the use of said trade-mark, to greatly decrease and fall off instead of increasing as by proper management they would have done; and that they have failed properly and widely to advertise and to keep advertised the said salve designated and identified by said trade-mark, and to keep the same by other methods of business pushed properly and constantly before the trade and the public, to the great detriment and depreciation of the value of said property; that they are devoting the income of said business almost wholly to their own living expenses and private uses and rely on the same wholly therefor, instead of devoting same to the keeping up of said business and the value

of the said trade-mark and the satisfaction of said mortgage, and threaten to continue so to do; that they have wrongfully failed to keep down the interest accruing on said notes secured by plaintiffs' said mortgage and have allowed the said interest so to accumulate and the business so to run down, that the net income from said business as conducted and applied by said defendants last aforesaid has become less than the interest constantly accruing upon said indebtedness secured by said mortgage to plaintiffs represented by said notes still due and unpaid, and the said property has become and is insufficient security for said indebtedness secured by said mortgage, and unless said property can speedily be sold to pay off and discharge the principal and interest of said indebtedness still due and unpaid on said notes, or said property be placed under other and competent management that will keep up and extend the business and enlarge the income by proper push and who will apply the income to that purpose and to the satisfaction of said mortgage indebtedness now existing to plaintiffs, the decrease in the value and income of the property and business will continue and plaintiffs' loss will continue to increase and the value of their security to decrease.

"That said defendants last aforesaid, the mortgagors, are without means, except the income of said business, and are not financially responsible, and that a deficiency of judgment against them could not be collected on execution by any process at law or in equity except out of said income, and that outside of said income each and all of said defendants, plaintiffs' mortgagors, are insolvent.

"Plaintiffs further state that said defendants last aforesaid will, about June 20, 1898, receive from said Ballard, under said contract, large sums of money for said salve, as in said contract provided, which plaintiffs believe and allege they will appropriate to their own use as aforesaid, as they have been

doing as aforesaid, and will fail and refuse to use the same to keep up said business and the value of said trade-mark, and to pay or hold the same on account of the said mortgage indebtedness still due and unpaid, notwithstanding the filing of this bill and the commencement of this suit, and said money so to be received under said contract and the other moneys so to be received thereunder, and the other income and profits of said business, all needed and insufficient to discharge the mortgage indebtedness to plaintiffs still due and unpaid, and all property applicable, by law and right, to the discharge of the same after the filing of this bill, will be wholly lost for that purpose by the wrongful appropriation thereof to the private uses of said defendants last aforesaid, plaintiffs' mortgagors, unless said business be placed without delay under a different management and the control of said business and right to receive said moneys, income and profits, is taken out of their hands and placed in that of other management pending this suit, or until the said mortgaged property is sold herein by order of this court; and unless the said defendants last aforesaid, the mortgagors be restrained by order of this court from continuing said business and the manufacture and sale of said salve, or of interfering therewith in any manner, and from receiving and collecting said moneys and said income and profits, or any moneys arising from said business, or income or profits from the same.

"Plaintiffs further state that they are informed and believe that said defendants last aforesaid, their mortgagors, are about to manufacture large quantities of said salve, prepared with said trade-mark attached thereto as aforesaid, and sell the same under the credit of said trade-mark, in violation of their said contract with Ballard and out of the ordinary course of the business, and in violation of the rights of plaintiffs under and by virtue of the said mortgage from them, and from and arising out of said default and the filing of this bill, with the

fraudulent purpose of obtaining all the money possible from said salve and the trade-mark used in connection therewith as aforesaid before said property mortgaged to plaintiffs is sold or taken out of their possession, management and control, and to appropriate all the money so obtained to their own use instead of to the payment of the said existing mortgage indebtedness to plaintiffs, as they ought to do so aforesaid; and plaintiffs say that if said defendants last aforesaid, the mortgagors, make sale of large quantities of said salve accredited by said trade-mark as last aforesaid, they will glut the market with the same and depreciate and make almost valueless for a time said proprietary salve and said trade-mark; and plaintiffs say they are informed and believe they will so do unless said business is taken out of their control and management as aforesaid and they are restrained therefrom by the order of this court.

"Plaintiffs further say that said defendants last aforesaid, the mortgagors, threaten to make known said secret formula to others and thus destroy the exclusive right, now existing in said defendants and mortgaged by them, to manufacture and sell said salve made according to said formula, and thereby and by representations that the title to the exclusive right to use said trade-mark is not conveyed by said mortgage, to destroy the value of said trade-mark and said mortgaged property for the liquidation of their indebtedness to plaintiffs secured by said mortgage by destroying its value to the purchaser under said mortgage. And plaintiffs are informed and believe they will do so unless restrained by the order of this court.

"Plaintiffs further state that, notwithstanding said defendants last aforesaid, said mortgagors, have continuously from September 22, 1891, to August 16, 1897, recognized and acknowledged their said indebtedness secured by said mortgage as a valid and subsisting obligation against them, and made, between said dates, the payments aforesaid thereon, yet plaintiffs

allége that since the last payment made thereon as aforesaid, the said William T. Blow, Jr., and Benjamin E. Blow, claim that neither said indebtedness and the notes representing the same, nor any part thereof, are a valid obligation against them or either of them.

"Plaintiffs further state that by the said acts and doings of said defendants, Julia W. Blow, William T. Blow, Jr., and Benjamin E. Blow, said mortgagors aforesaid, they are without an adequate remedy at law, and are threatened with irreparable loss by said defendants through the same in the great and irreparable depreciation of their security, now insufficient to pay them, and loss of the moneys, income and profits arising therefrom after the filing hereof, and irreparable injury to the exclusive and other rights conveyed as such security by said mortgage to them, unless a receiver is appointed by this court to take possession of all the property covered by said mortgage to them, and to continue to manage, control, conduct and keep up said business and receive all moneys, income and profits arising from said business and becoming due therefrom after the date of the filing of said bill; and unless said defendants last aforesaid, and each of them, and their agents and servants, be enjoined and restrained from further conducting said business of manufacturing said salve according to the formula, or using said trade-mark, or any essential part thereof, and from receiving and collecting any money coming due under said Ballard contract after the filing of this bill, or other money, income or profit in anywise arising therefrom and from in anywise interfering with or obstructing the receiver of this court, or his agents, or servants, in carrying on, conducting, managing, controlling and keeping up said business and in receiving and collecting all said moneys, income and profits, arising from said business after the filing hereof, and from doing in anywise, either directly or indirectly, any of the things com-

plained of and threatened to be done by them.

"Wherefore, plaintiffs pray," etc.

Then follows a prayer at great length for an accounting, an adjustment of the equities of all the parties in the property, for a foreclosure and sale, and a distribution of the proceeds according to the respective rights and interests of the parties, and in the meantime for a temporary injunction and the appointment of a receiver.

The petition was duly verified by affidavit and on the day it was filed the plaintiffs made application for a temporary injunction and the appointment of a receiver as therein prayed for, and thereupon the following proceedings were had:

"Now on this day come the plaintiffs in the above entitled cause by their attorneys, Dawson and Garvin, and make ex parte application to the court for the appointment of a provisional receiver and a temporary injunction upon the facts alleged in the petition filed herein, duly verified by the affidavit of Edwin Curd. And the bill having been read, the court does consider and adjudge that it appears from the facts stated in the bill that there is impending a danger of irreparable loss, and that the security is insufficient and that a provisional receiver and temporary injunction against the defendants Julia W. Blow, William T. Blow, Jr., and Benjamin E. Blow should be granted plaintiffs to secure them against said loss and other irreparable injury until the said defendants have an opportunity to come in and the matter of appointing a receiver and granting an injunction *pendente lite,* as prayed, may be adjudicated upon full proof.

"Now, therefore, it is considered, ordered and decreed by this court that a receiver be appointed, and Beverly A. Dyer is hereby appointed receiver hereunder to take possession of the trade-mark, 'Dr. T. L. Stephens Celebrated Chemical Eyesalve,' and every substantial part thereof described in the

bill and mortgage, and all of said defendants' exclusive rights
therein and to the use of the same in selling 'Dr. T. L. Steph-
ens's Celebrated Chemical Eyesalve' mentioned in the bill, and
of the original formula for making said salve, and any copies
thereof in the possession or under the control of said defend-
ants, and of all their exclusive rights to manufacture said eye-
salve according to said formula, and of all plates and stones
for printing said trade-mark and labels connected therewith,
and all printed copies of said trade-mark and labels attached or
unattached, and collecting and receiving all moneys due or to
become due for said salve under the contract of said defendant
James F. Ballard with said defendants, mentioned in the bill,
and of all other moneys due and owing for said salve, if any,
and with full authority in said receiver to carry on and control
said business of manufacturing said salve and selling the same
with the use of said trade-mark and labels, and generally to
conserve said trade-mark and labels and the business of manu-
facturing said salve according to said formula and of selling
the same by and with the use of said trade-mark and labels un-
til the sale thereof under the order of this court, or until the fur-
ther order of this court, all under and subject to the directions
of this court, and to carry out and perform the said contract
with said Ballard, and to collect and receive all moneys accru-
ing and becoming due thereunder in any way after his appoint-
ment, and to hold all said property subject to the orders and
directions of this court, and to an accounting with this court.

"This appointment is, however, ordered and decreed sub-
ject to the right of said defendants to come in at any time upon
due notice to plaintiffs and move to set aside or modify this
order upon full hearing and proof.

"It is further considered, ordered and decreed by this
court that the defendants, Julia W. Blow, Wm. T. Blow, Jr.,
and Benjamin E. Blow, be and they are hereby enjoined and

restrained by the temporary order of this court from preventing the receiver appointed herein from taking into his possession and holding all of the property which he is required by this order to take possession of, and that said defendants be and they are hereby enjoined and restrained from in any way interfering with the possession, control and use by said receiver of said property or any part thereof, and from demanding, collecting, receiving or in any manner obtaining possession of moneys due or to become due from said defendant James F. Ballard under his said contract with them for said salve, and any other moneys to be received and collected by said receiver after the filing of this bill and outstanding at the date of the appointment of said receiver, or in any manner whatsoever interfering with said receiver, and from disclosing to anyone said secret formula or recipe, and from disposing in any way of any copies of said trade-mark or labels otherwise than by delivering them to the said receiver, and from in any way lessening or destroying the value of the property referred to in this order in the hands of this receiver, and from manufacturing or selling any salve with the said trade-mark, or any substantial part of said trade-mark, attached, or from manufacturing or selling any salve manufactured according to said formula.

"It is further ordered, considered and decreed by this court that the defendant, James F. Ballard, be and he is hereby enjoined by the temporary orders of this court from paying over any money to said Julia W. Blow, Wm. T. Blow, Jr., and Benjamin E. Blow, or either of them, or to anyone except the receiver herein on account of said salve sold and delivered or to be sold and delivered to him under his contract with said defendants.

"It is further ordered and decreed by this court that the plaintiffs may at any time hereafter come in and move the court to broaden this order either in respect to the appointment of a

receiver or in respect to this injunction.

"It is further ordered by the court that upon plaintiffs giving bond in the sum of ten thousand dollars with surety to be approved by the court, the said order is made by the court.

"Thereupon plaintiffs present a bond in the sum aforesaid, with Lincoln Trust Company as surety, which said bond is approved by the court and filed."

The restraining order as recited, was duly served by the sheriff June 11, 1898, on Benjamin E. Blow and on Frederick W. Mott and James F. Ballard, June 13, 1898, and on July 9, 1898, court adjourned to court in course.

Afterwards, on the sixteenth day of September, 1898, the defendants, Julia W. Blow, William T. Blow and Benjamin E. Blow, filed their demurrer to the petition, the grounds of their demurrer being as follows:

"First. There is no equity on the face of the bill.

"Second. Said suit can not be sustained in manner and form set forth, because the said parties named as plaintiffs therein can not sustain or maintain their suit in a joint action, as plaintiffs.

"Third. Said mortgage is null and void and does not convey any of the property or money named and sought in said petition to be seized and appropriated to the payment of the notes therein named and the satisfaction of said mortgage.

"Fourth. Said petition or complaint does not state facts sufficient to constitute a cause of action."

And on the same day said defendants filed their motion to dissolve the temporary injunction and vacate the order appointing a receiver. At the ensuing October term of the court no action was taken in the case, but at the December term thereof, on the eighteenth of January, 1899, the demurrer was considered by the court and overruled, and on the same day the court

Vol 163 mo—41

having also considered the motion to dissolve the injunction and to vacate the order appointing a receiver, the same was also overruled. No exception was taken to the order of the court overruling said motion.

Afterwards, on the twenty-third of January, 1899, the separate answer of defendants Mott and Lueders was filed by leave of court, and afterwards on the twenty-eighth of January, 1899, the separate answer of Julia W. Blow, William T. Blow and Benjamin E. Blow was filed without leave.

Afterwards, on the twenty-eighth of January, 1899, the said defendants, Julia W. Blow, William T. Blow and Benjamin E. Blow, filed another motion to dissolve the temporary injunction and to vacate the order appointing a receiver, which motion was on the sixth of February, 1899, overruled, and no exception taken to the order overruling said motion.

Afterwards, on the ninth of February, 1899, the following affidavit was filed:

"Benjamin E. Blow, one of above defendants, for himself and as agent for Julia W. Blow and William T. Blow, Jr., being duly sworn, makes oath and says that the appeal prayed for in the above entitled cause is not made for vexation or delay, but because the affiant believes that the appellant is aggrieved by the judgment or decision of the court overruling the motion to vacate order appointing receiver in above entitled cause upon petition and answer. "BENJAMIN E. BLOW.

"Subscribed and sworn to before me this ninth day of February, A. D. 1899. "HENRY TROLL, Clerk."

Thereupon, without any motion for new trial, review or in arrest, the appeal to the Supreme Court as prayed for in said affidavit was on that day allowed.

Afterwards, on the seventeenth day of February, 1899,

the separate answer of defendants, Julia W. Blow, Benjamin E. Blow and William T. Blow, Jr., was on motion of plaintiffs stricken from the files for the reason that it was filed out of time without notice, and without leave of court, with which action of the court we have nothing to do. And as no exceptions were taken to the rulings of the court below upon either of appellants' motions to vacate the order appointing a receiver, from which action of the court alone this appeal is taken, they constitute no part of the record and are not set out. It is upon this record, such as it is, that appellants now ask a reversal of the rulings of the trial court on the motion to which no exceptions were taken and which that court was never afforded an opportunity to review, and the appeal is argued as though the whole case was here on its merits, or at least as if it were here on the demurrer upon which the appellants did not stand. Even if exceptions had been taken and properly saved to the action of the trial court in refusing to vacate its order appointing a receiver, only that branch of the case would be before us for review, and the sufficiency of the bill so far as it concerns the relief asked for in the final decree would not be considered, nor any other question except such as was legitimately connected with the granting of the order. [Beach on Receivers (Ald. Ed.), sec. 118; Elliott's App. Pro., sec. 100; Supreme Sitting Order of Iron Hall v. Baker, 134 Ind. 293; Naylor v. Sidener, 106 Ind. 179; Wabash Railroad Co. v. Dykeman, 133 Ind. 56.] Even in such a case the court would not examine the question whether upon final hearing the relief prayed for should be granted, but only whether the bill or complaint is sufficient to call into action the power of the court to make the order. [17 Encyl. of Plead. and Prac., 867.] Or, as was said in Naylor v. Sidener, supra, l. c. 184, upon such an appeal, "we will necessarily look into the record to ascertain whether an action was pending when a receiver was

appointed, and to be informed as to the general nature and scope of the proceedings which resulted in his appointment. But such examination of the records ought not, and does not, involve any formal ruling upon the sufficiency of the complaint as a demand for other or more general relief."

If such be the rule in cases where the propriety of the order appointing a receiver by the lower court is really before the appellate court on proper exceptions taken to the appointment, what can be before the appellate court for review in a case such as this, where no such exceptions were taken or saved in the lower court, and when the sufficiency of the petition on which the appointment was made was virtually conceded by the appellants, at least for the purposes of a trial on the merits in that court, by their answering over, after their demurrer had been overruled? It would seem, that in such case there can be nothing before the appellate court for determination, unless it be the question of the jurisdiction of the trial court to make the order. And as it is beyond question that the circuit courts in this State are courts of equity, having general original chancery jurisdiction, of which they are not shorn by the statute providing for the foreclosure of mortgages (Brim v. Fleming, 135 Mo. 597; Hannah v. Davis, 112 Mo. 608; Wolff v. Ward, 104 Mo. 146; McClurg v. Phillips, 49 Mo. 315); and as the jurisdiction of such courts in the matter of the appointment of receivers over mortgaged property for the protection of mortgagees, or in aid of suits for the foreclosure thereof is well established, and has been exercised by them from time immemorial (High on Receivers (3 Ed.), sec. 639; Beach on Receivers, p. 38, sec. 4; Edwards on Receivers, 356; Jones on Mortgages, secs. 1516 to 1534); and as all the defendants appeared and submitted themselves to the jurisdiction of the court, there can, also, be no question but that the court had jurisdiction of the persons and of the subject-matter of the

appointment; and upon this record the only thing that can be done is to dismiss the appeal so that the case in the circuit court may proceed to final hearing on its merits; to which end, the appellants ought to have leave to file their answer, or file an amended answer within reasonable time, with which suggestion the appeal will be dismissed.

All concur.